# WILSON ET AL. *v.* GARCIA

No. 83–2146.   Argued January 14, 1985—Decided April 17, 1985

STEVENS, J., delivered the opinion of the Court, in which BURGER, C. J., and BRENNAN, WHITE, MARSHALL, BLACKMUN, and REHNQUIST, JJ., joined. O'CONNOR, J., filed a dissenting opinion, *post*, p. 280. POWELL, J., took no part in the consideration or decision of the case.

*Bruce Hall* argued the cause for petitioners. With him on the briefs were *Diane Fisher* and *Ben M. Allen.*

*Steven G. Farber,* by appointment of the Court, 469 U. S. 1069, argued the cause for respondent. With him on the brief was *Richard Rosenstock.**

JUSTICE STEVENS delivered the opinion of the Court.

In this case we must determine the most appropriate state statute of limitations to apply to claims enforceable under § 1 of the Civil Rights Act of 1871,[1] which is codified in its present form as 42 U. S. C. § 1983.

---

*Robert H. Macy* filed a brief for Oklahoma County as *amicus curiae* urging reversal.

[1] *"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That any person who, under color of any law, statute, ordinance, regulation, custom, or usage of any State, shall subject, or cause to be subjected, any person within the jurisdiction of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding, be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress . . . ." 17 Stat. 13.

On January 28, 1982, respondent brought this § 1983 action in the United States District Court for the District of New Mexico seeking "money damages to compensate him for the deprivation of his civil rights guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and for the personal injuries he suffered which were caused by the acts and omissions of the [petitioners] acting under color of law." App. 4. The complaint alleged that on April 27, 1979, petitioner Wilson, a New Mexico State Police officer, unlawfully arrested the respondent, "brutally and viciously" beat him, and sprayed his face with tear gas; that petitioner Vigil, the Chief of the New Mexico State Police, had notice of Officer Wilson's allegedly "violent propensities," and had failed to reprimand him for committing other unprovoked attacks on citizens; and that Vigil's training and supervision of Wilson was seriously deficient. *Id.*, at 6–7.

The respondent's complaint was filed two years and nine months after the claim purportedly arose. Petitioners moved to dismiss on the ground that the action was barred by the 2-year statute of limitations contained in § 41–4–15(A) of the New Mexico Tort Claims Act.[2] The petitioners' motion was supported by a decision of the New Mexico Supreme Court which squarely held that the Tort Claims Act provides "the most closely analogous state cause of action"[3] to § 1983, and that its 2-year statute of limitations is therefore appli-

---

[2] That section provides:

"Actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death . . . ." N. M. Stat. Ann. § 41–4–15(A) (1978).

[3] "Under New Mexico law, the most closely analogous state cause of action is provided for by the New Mexico Tort Claims Act under [§ 41–4–12]. The statute of limitations applicable to a cause of action under Section 41–4–12 is set forth in [§ 41–4–15(A)]. Under Section 41–4–15, the action must be commenced within two years after the occurrence which results in the injury." *DeVargas* v. *New Mexico*, 97 N. M. 563, 564, 642 P. 2d 166, 167 (1982).

cable to actions commenced under § 1983 in the state courts. *DeVargas* v. *New Mexico*, 97 N. M. 563, 642 P. 2d 166 (1982). In addition to the 2-year statute of limitations in the Tort Claims Act, two other New Mexico statutes conceivably could apply to § 1983 claims: § 37–1–8, which provides a 3-year limitation period for actions "for an injury to the person or reputation of any person";[4] and § 37–1–4, which provides a 4-year limitation period for "all other actions not herein otherwise provided for."[5]  If either of these longer statutes applies to the respondent's § 1983 claim, the complaint was timely filed.

In ruling on the petitioners' motion to dismiss, the District Court concluded that the New Mexico Supreme Court's decision in *DeVargas* was not controlling because "the characterization of the nature of the right being vindicated under § 1983 is a matter of federal, rather than state, law."[6]  After reviewing various approaches to the question, the District Court concluded that "§ 1983 actions are best characterized as actions based on statute."[7]  Because there is no specific New Mexico statute of limitations governing such claims, the District Court held that § 37–1–4, the residual 4-year statute, applied to § 1983 actions brought in New Mexico.  The court denied the petitioners' motion to dismiss and certified an interlocutory appeal under 28 U. S. C. § 1292(b).[8]

---

[4] N. M. Stat. Ann. § 37–1–8 (1978) ("Actions . . . for an injury to the person or reputation of any person [must be brought] within three years").

[5] N. M. Stat. Ann. § 37–1–4 (1978) ("all other actions not herein otherwise provided for and specified [must be brought] within four years").

[6] App. to Pet. for Cert. 42.

[7] *Id.*, at 43–44.

[8] That section provides:

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals may thereupon, in its

The Court of Appeals for the Tenth Circuit accepted the appeal. App. 2. After argument before a three-judge panel, the case was set for reargument before the entire court. In a unanimous en banc opinion, the Court of Appeals affirmed the District Court's order denying the motion to dismiss the complaint. 731 F. 2d 640 (1984).

The Court of Appeals' reasoning was slightly different from the District Court's. It agreed that the characterization of a § 1983 claim is a matter of federal law, and that the New Mexico Supreme Court's decision in *DeVargas* was therefore not conclusive on the question. 731 F. 2d, at 643, 651, n. 5. The opinion reviewed the varying approaches of the United States Courts of Appeals,[9] and concluded that even though § 1983 actions encompass a wide variety of fact situations and legal theories, "[a]ll of the federal values at issue in selecting a limitations period for section 1983 claims are best served by articulating one uniform characterization describing the essential nature underlying all such claims." *Id.*, at 650. Distilling the essence of the § 1983 cause of action, the court held that every claim enforceable under the statute is, in reality, "an action for injury to personal rights," and that "[h]enceforth, all § 1983 claims in [the] circuit will be uniformly so characterized for statute of limitations purposes." *Id.*, at 651. Accordingly, the appropriate statute of limitations for § 1983 actions brought in New Mexico was the 3-year statute applicable to personal injury actions.[10] It followed that the respondent had filed his complaint in time.

---

discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . ."

[9] 731 F. 2d, at 643–648.

[10] On the same day that it filed the en banc opinion in this case, the Court of Appeals issued en banc opinions adopting the appropriate statute of limitations for § 1983 claims brought in Kansas, Utah, and Colorado. *Hamilton* v. *City of Overland Park*, 730 F. 2d 613 (CA10 1984) (applying 2-year Kansas statute governing actions for "injuries to the rights of another"), cert. pending, No. 83–2131; *Mismash* v. *Murray City*, 730 F. 2d 1366 (CA10 1984) (applying 4-year Utah statute for actions not limited by a

The Court of Appeals acknowledged that its holding is at odds with the New Mexico Supreme Court's decision in *DeVargas*. It also commented on the extensive conflict in the Federal Courts of Appeals: "the courts vary widely in the methods by which they characterize a section 1983 action, and in the criteria by which they evaluate the applicability of a particular state statute of limitations to a particular claim. The actual process used to select an appropriate state statute varies from circuit to circuit and sometimes from panel to panel." 731 F. 2d, at 643. "Few areas of the law stand in greater need of firmly defined, easily applied rules than does the subject of periods of limitations." *Chardon* v. *Fumero Soto*, 462 U. S. 650, 667 (1983) (REHNQUIST, J., dissenting). Thus, the conflict, confusion, and uncertainty concerning the appropriate statute of limitations to apply to this most important, and ubiquitous, civil rights statute provided compelling reasons for granting certiorari. 469 U. S. 815 (1984). We find the reasoning in the Court of Appeals' opinion persuasive, and affirm.

I

The Reconstruction Civil Rights Acts do not contain a specific statute of limitations governing § 1983 actions [11]—"a void which is commonplace in federal statutory law." *Board of Regents* v. *Tomanio*, 446 U. S. 478, 483 (1980). When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal

---

specific statute of limitations), cert. pending, No. 83–2140; *McKay* v. *Hammock*, 730 F. 2d 1367 (CA10 1984) (applying 3-year Colorado statute governing "[a]ll other actions of every kind for which no other period of limitation is provided by law"). The court also held that its new approach to borrowing statutes of limitations in § 1983 actions would not be applied retroactively to bar "plaintiffs' right to their day in court when their action was timely under the law in effect at the time their suit was commenced." *Jackson* v. *City of Bloomfield*, 731 F. 2d 652, 655 (CA10 1984).

[11] See *O'Sullivan* v. *Felix*, 233 U. S. 318 (1914).

law or policy to do so.[12] In 42 U. S. C. § 1988, Congress has implicitly endorsed this approach with respect to claims enforceable under the Reconstruction Civil Rights Acts.

The language of § 1988,[13] directs the courts to follow "a three-step process" in determining the rules of decision applicable to civil rights claims:

> "First, courts are to look to the laws of the United States 'so far as such laws are suitable to carry [the civil and criminal civil rights statutes] into effect.' [42 U. S. C. § 1988.] If no suitable federal rule exists, courts undertake the second step by considering application of state 'common law, as modified and changed by the constitution and statutes' of the forum state. *Ibid.* A third step asserts the predominance of the federal interest: courts are to apply state law only if it is not 'inconsistent with the Constitution and laws of the United States.' *Ibid.*" *Burnett* v. *Grattan*, 468 U. S. 42, 47–48 (1984).

---

[12] See, *e. g.*, *Runyon* v. *McCrary*, 427 U. S. 160, 180–182 (1976); *Auto Workers* v. *Hoosier Cardinal Corp.*, 383 U. S. 696, 704 (1966); *Chattanooga Foundry & Pipe Works* v. *Atlanta*, 203 U. S. 390, 397–398 (1906); *McClaine* v. *Rankin*, 197 U. S. 154, 158 (1905); *Campbell* v. *Haverhill*, 155 U. S. 610, 617 (1895).

[13] Title 42 U. S. C. § 1988 provides, in relevant part:

"The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title 'CIVIL RIGHTS,' and of Title 'CRIMES,' for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or ciminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . ."

This case principally involves the second step in the process: the selection of "the most appropriate,"[14] or "the most analogous"[15] state statute of limitations to apply to this § 1983 claim.

In order to determine the most "most appropriate" or "most analogous" New Mexico statute to apply to the respondent's claim, we must answer three questions. We must first consider whether state law or federal law governs the characterization of a § 1983 claim for statute of limitations purposes. If federal law applies, we must next decide whether all § 1983 claims should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case. Finally, we must characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle. Although the text of neither § 1983 nor § 1988 provides a pellucid answer to any of these questions, all three parts of the inquiry are, in final analysis, questions of statutory construction.

## II

Our identification of the correct source of law properly begins with the text of § 1988.[16] Congress' first instruction in the statute is that the law to be applied in adjudicating civil rights claims shall be in "conformity with the laws of the United States, so far as such laws are suitable." This mandate implies that resort to state law—the second step in the process—should not be undertaken before principles of federal law are exhausted. The characterization of § 1983 for statute of limitations purposes is derived from the elements of the cause of action, and Congress' purpose in providing it. These, of course, are matters of federal law. Since federal law is available to decide the question, the language of § 1988

---

[14] *Johnson* v. *Railway Express Agency, Inc.*, 421 U. S. 454, 462 (1975).

[15] *Board of Regents* v. *Tomanio*, 446 U. S. 478, 488 (1980).

[16] See n. 13, *supra*.

directs that the matter of characterization should be treated as a federal question. Only the length of the limitations period, and closely related questions of tolling and application,[17] are to be governed by state law.

This interpretation is also supported by Congress' third instruction in § 1988: state law shall only apply "so far as the same is not inconsistent with" federal law. This requirement emphasizes "the predominance of the federal interest" in the borrowing process, taken as a whole. *Burnett* v. *Grattan*, 468 U. S., at 48.[18] Even when principles of state law are borrowed to assist in the enforcement of this federal remedy, the state rule is adopted as "a federal rule responsive to the need whenever a federal right is impaired." *Sullivan* v. *Little Hunting Park, Inc.*, 396 U. S. 229, 240 (1969). The importation of the policies and purposes of the States on matters of civil rights is not the primary office of the borrowing provision in § 1988; rather, the statute is designed to assure that neutral rules of decision will be available to enforce the civil rights actions, among them § 1983. Congress surely did not intend to assign to state courts and legislatures a conclusive role in the formative function of defining and characterizing the essential elements of a federal cause of action.

In borrowing statutes of limitations for other federal claims,[19] this Court has generally recognized that the problem

---

[17] "In virtually all statutes of limitations the chronological length of the limitation period is interrelated with provisions regarding tolling, revival, and questions of application." *Johnson* v. *Railway Express Agency, Inc.*, 421 U. S., at 464; see also *Chardon* v. *Fumero Soto*, 462 U. S. 650, 657 (1983); *Board of Regents* v. *Tomanio*, 446 U. S., at 484.

[18] Cf. *Occidental Life Insurance Co.* v. *EEOC*, 432 U. S. 355, 367 (1977) ("State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies").

[19] The problem we address today often arose in treble-damages litigation under the antitrust laws before Congress enacted a federal statute of limitations. 69 Stat. 283, 15 U. S. C. § 15b. The question whether antitrust

of characterization "is ultimately a question of federal law." *Auto Workers* v. *Hoosier Cardinal Corp.*, 383 U. S. 696, 706 (1966) (§ 301 of the Labor Management Relations Act of 1947, 29 U. S. C. § 185).[20] In *DelCostello* v. *Teamsters*, 462 U. S. 151 (1983), for example, we recently declined to apply a state statute of limitations when we were convinced that a federal statute of limitations for another cause of action better reflected the balance that Congress would have preferred between the substantive policies underlying the federal claim and the policies of repose.[21] So here, the federal interest in uniformity and the interest in having "firmly defined, easily applied rules," see *Chardon*, 462 U. S., at 667 (REHNQUIST, J., dissenting), support the conclusion that Congress intended the characterization of § 1983 to be measured by federal rather than state standards.[22] The Court of Appeals was

---

claims were more analogous to penal claims or to claims arising in tort, contract, or on a statute, was treated as a matter of federal law by the better reasoned authority. See, *e. g.*, *Moviecolor Limited* v. *Eastman Kodak Co.*, 288 F. 2d 80, 83 (CA2), cert. denied, 368 U. S. 821 (1961); *Fulton* v. *Loew's, Inc.*, 114 F. Supp. 676, 678–682 (Kan. 1953); *Electric Theater Co.* v. *Twentieth Century-Fox Film Corp.*, 113 F. Supp. 937, 941–942, (WD Mo. 1953); *Wolf Sales Co.* v. *Rudolf Wurlitzer Co.*, 105 F. Supp. 506, 509 (Colo. 1952).

[20] See also 383 U. S., at 709 (WHITE, J., dissenting) ("[T]he cases also establish that the silence of Congress is not to be read as automatically putting an imprimatur on state law. Rather, state law is applied only because it supplements and fulfills federal policy, and the ultimate question is what federal policy requires").

[21] "Nevertheless, when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law." *DelCostello* v. *Teamsters*, 462 U. S., at 171–172. Cf. *Board of Regents* v. *Tomanio*, 446 U. S., at 488 ("[T]his Court has . . . 'borrowed' what *it considered to be* the most analogous state statute of limitations to bar tardily commenced proceedings") (emphasis added).

[22] The weight of federal authority is consistent with this view. See, *e. g.*, 731 F. 2d, at 643, 651, n. 5 (opinion below); *McNutt* v. *Duke Precision Dental & Orthodontic Laboratories, Inc.*, 698 F. 2d 676, 679 (CA4

therefore correct in concluding that it was not bound by the New Mexico Supreme Court's holding in *DeVargas*.

## III

A federal cause of action "brought at any distance of time" would be "utterly repugnant to the genius of our laws." *Adams* v. *Woods*, 2 Cranch 336, 342 (1805). Just determinations of fact cannot be made when, because of the passage of time, the memories of witnesses have faded or evidence is lost. In compelling circumstances, even wrongdoers are entitled to assume that their sins may be forgotten.

The borrowing of statutes of limitations for § 1983 claims serves these policies of repose. Of course, the application of *any* statute of limitations would promote repose. By adopting the statute governing an analogous cause of action under state law, federal law incorporates the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the state cause of action. However, when the federal claim differs from the state cause of action in fundamental respects, the State's choice of a specific period of limitation is, at best, only a rough approximation of "the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones." *Johnson* v. *Railway Express Agency, Inc.*, 421 U. S. 454, 463–464 (1975).

Thus, in considering whether all § 1983 claims should be characterized in the same way for limitations purposes, it is useful to recall that § 1983 provides "a uniquely federal rem-

---

1983) (§ 1981); *Pauk* v. *Board of Trustees of the City University of N. Y.*, 654 F. 2d 856, 865–866, and n. 6 (CA2 1981) (§ 1983), cert. denied, 455 U. S. 1000 (1982); *Clark* v. *Musick*, 623 F. 2d 89, 91 (CA9 1980) (§ 1983); *Williams* v. *Walsh*, 558 F. 2d 667, 672 (CA2 1977) (§ 1983); *Beard* v. *Stephens*, 372 F. 2d 685, 688 (CA5 1967); but see *Kosikowski* v. *Bourne*, 659 F. 2d 105, 108 (CA9 1981) (§ 1983). To the extent that federal courts have, on occasion, deferred to a State's characterization of § 1983 for statute of limitations purposes, they have done so as a matter of preference or comity—not obligation.

edy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation." *Mitchum* v. *Foster*, 407 U. S. 225, 239 (1972). The high purposes of this unique remedy make it appropriate to accord the statute "a sweep as broad as its language."[23] Because the § 1983 remedy is one that can "override certain kinds of state laws," *Monroe* v. *Pape*, 365 U. S. 167, 173 (1961), and is, in all events, "supplementary to any remedy any State might have," *McNeese* v. *Board of Education*, 373 U. S. 668, 672 (1963), it can have no precise counterpart in state law. *Monroe* v. *Pape*, 365 U. S., at 196, n. 5 (Harlan, J., concurring). Therefore, it is "the purest coincidence," *ibid.*, when state statutes or the common law provide for equivalent remedies; any analogies to those causes of action are bound to be imperfect.[24]

In this light, practical considerations help to explain why a simple, broad characterization of all § 1983 claims best fits the statute's remedial purpose. The experience of the courts that have predicated their choice of the correct statute of limitations on an analysis of the particular facts of each claim demonstrates that their approach inevitably breeds uncertainty and time-consuming litigation that is foreign to the central purposes of § 1983.[25] Almost every § 1983 claim can be favorably analogized to more than one of the ancient

---

[23] *United States* v. *Price*, 383 U. S. 787, 801 (1966); cf. *Griffin* v. *Breckenridge*, 403 U. S. 88, 97 (1971).

[24] For this reason the adoption of one analogy rather than another will often be somewhat arbitrary; in such a case, the losing party may "infer that the choice of a limitations period in his case was result oriented, thereby undermining his belief that he has been dealt with fairly." 731 F. 2d, at 650.

[25] A comprehensive annotation in a publication that is popular with the practicing bar concludes that there is "uncertainty, confusion, and lack of uniformity in selecting the applicable statute of limitations in § 1983 suits." Annot., 45 A. L. R. Fed. 548, 554 (1979). See also Biehler, Limiting the Right to Sue, 33 Drake L. Rev. 1 (1983); Comment, 1976 Ariz. State L. J. 97; Notes, 26 Wayne L. Rev. 61 (1979).

common-law forms of action, each of which may be governed by a different statute of limitations. In the case before us, for example, the respondent alleges that he was injured by a New Mexico State Police officer who used excessive force to carry out an unlawful arrest. This § 1983 claim is arguably analogous to distinct state tort claims for false arrest, assault and battery, or personal injuries. Moreover, the claim could also be characterized as one arising under a statute, or as governed by the special New Mexico statute authorizing recovery against the State for the torts of its agents.

A catalog of other constitutional claims that have been alleged under § 1983 would encompass numerous and diverse topics and subtopics: discrimination in public employment on the basis of race or the exercise of First Amendment rights,[26] discharge or demotion without procedural due process,[27] mistreatment of schoolchildren,[28] deliberate indifference to the medical needs of prison inmates,[29] the seizure of chattels without advance notice or sufficient opportunity to be heard[30]—to identify only a few.[31] If the choice of the statute

---

[26] E. g., Burnett v. Grattan, 468 U. S. 42 (1984).

[27] E. g., Cleveland Board of Education v. Loudermill, 470 U. S. 532 (1985); Bishop v. Wood, 426 U. S. 341 (1976).

[28] E. g., Ingraham v. Wright, 430 U. S. 651 (1977).

[29] E. g., Estelle v. Gamble, 429 U. S. 97 (1976).

[30] E. g., Lugar v. Edmondson Oil Co., 457 U. S. 922 (1982); Flagg Bros., Inc. v. Brooks, 436 U. S. 149 (1978).

[31] JUSTICE BLACKMUN has summarized a few of the other causes of action that have been alleged under § 1983:

"In the First Amendment area, § 1983 was relied on for a challenge to state laws that required loyalty oaths, or prevented the wearing of armbands in protest of our policy in Vietnam. It was also used to restrain prosecutions under Louisiana's Subversive Activities and Communist Control Law. It was utilized by the NAACP to establish that organization's authority to advise Negroes of their legal rights. It was used to challenge bans on lawyer advertising and spending limitations on the public education activities of charities. . . . The case establishing that a welfare recipient has a right to notice and a hearing before his benefits are terminated was a § 1983 case. Along the same line, § 1983 cases have confirmed the due process rights of

of limitations were to depend upon the particular facts or the precise legal theory of each claim, counsel could almost always argue, with considerable force, that two or more periods of limitations should apply to each § 1983 claim. Moreover, under such an approach different statutes of limitations would be applied to the various § 1983 claims arising in the same State,[32] and multiple periods of limitations would often apply to the same case.[33]  There is no reason to believe

recipients of utility service [and] of employees entitled under state law to seek redress for unlawful discharge . . . .  Section 1983 has been used to challenge mandatory maternity leave policies and state restrictions on social security benefits.  The list includes challenges to state restrictions on the right to vote, from poll taxes and white primaries to unequal apportionment schemes.  It includes a challenge to unequal age limitations for males and females on the sale of beer, and on limitations on the right to marry the person of one's choice.  And it includes successful efforts by mental patients and by prisoners to achieve First Amendment freedoms . . . and due process rights while within institutional walls."  Blackmun, Section 1983 and Federal Protection of Individual Rights—Will the Statute Remain Alive or Fade Away?, Madison Lecture delivered at New York University School of Law, Nov. 14, 1984 (to be published in 60 N. Y. U. L. Rev. 1, 19–20 (1985) (footnotes omitted)).

[32] For example, compare *McGhee* v. *Ogburn,* 707 F. 2d 1312, 1313 (CA11 1983) (2-year Florida statute), with *Williams* v. *Rhoden,* 629 F. 2d 1099, 1104 (CA5 1980) (4-year Florida statute); *Hines* v. *Board of Education of Covington, Ky.,* 667 F. 2d 564, 565 (CA6 1982) (1-year Kentucky statute), with *Garner* v. *Stephens,* 460 F. 2d 1144, 1148 (CA6 1972) (5-year Kentucky statute); and *Whatley* v. *Department of Education,* 673 F. 2d 873, 877 (CA5 1982) (20-year Georgia statute), with *Wooten* v. *Sanders,* 572 F. 2d 500, 501 (CA5 1978) (2-year Georgia statute).

[33] For example, in *Polite* v. *Diehl,* 507 F. 2d 119 (CA3 1974) (en banc), the plaintiff alleged that police officers unlawfully arrested him, beat him and sprayed him with mace, coerced him into pleading guilty to various offenses, and had his automobile towed away.  The court held that a 1-year false arrest statute of limitations applied to the arrest claim, a 2-year personal injuries statute applied to the beating and coerced-plea claims, and a 6-year statute for actions seeking the recovery of goods applied to the towing claim.  See also *Chambers* v. *Omaha Public School District,* 536 F. 2d 222, 227 (CA8 1976); *Beard* v. *Stephens,* 372 F. 2d 685, 689–690 (CA5 1967).

that Congress would have sanctioned this interpretation of its statute.

When § 1983 was enacted, it is unlikely that Congress actually foresaw the wide diversity of claims that the new remedy would ultimately embrace. The simplicity of the admonition in § 1988 is consistent with the assumption that Congress intended the identification of the appropriate statute of limitations to be an uncomplicated task for judges, lawyers, and litigants, rather than a source of uncertainty, and unproduc tive and ever-increasing litigation. Moreover, the legislative purpose to create an effective remedy for the enforcement of federal civil rights is obstructed by uncertainty in the applicable statute of limitations, for scarce resources must be dissipated by useless litigation on collateral matters.[34]

Although the need for national uniformity "has not been held to warrant the displacement of state statutes of limitations for civil rights actions," *Board of Regents* v. *Tomanio*, 446 U. S., at 489, uniformity within each State is entirely consistent with the borrowing principle contained in § 1988.[35] We conclude that the statute is fairly construed as a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims. The federal interests in uniformity, certainty, and the minimization of unnecessary litigation all support the conclusion that Congress favored this simple approach.

---

[34] On a human level, uncertainty is costly to all parties. Plaintiffs may be denied their just remedy if they delay in filing their claims, having wrongly postulated that the courts would apply a longer statute. Defendants cannot calculate their contingent liabilities, not knowing with confidence when their delicts lie in repose.

[35] The Second and the Ninth Circuits emphasized the importance of uniformity in adopting a uniform characterization of § 1983 claims as claims arising on a statute. See *Pauk* v. *Board of Trustees of the City University of N. Y.*, 654 F. 2d, at 866; *Clark* v. *Musick*, 623 F. 2d, at 92; *Smith* v. *Cremins*, 308 F. 2d 187, 190 (CA9 1962). See also *Garmon* v. *Foust*, 668 F. 2d 400 (CA8) (en banc), cert. denied, 456 U. S. 998 (1982).

## IV

After exhaustively reviewing the different ways that § 1983 claims have been characterized in every Federal Circuit, the Court of Appeals concluded that the tort action for the recovery of damages for personal injuries is the best alternative available. 731 F. 2d, at 650–651. We agree that this choice is supported by the nature of the § 1983 remedy, and by the federal interest in ensuring that the borrowed period of limitations not discriminate against the federal civil rights remedy.

The specific historical catalyst for the Civil Rights Act of 1871 was the campaign of violence and deception in the South, fomented by the Ku Klux Klan, which was denying decent citizens their civil and political rights. See *Briscoe* v. *LaHue*, 460 U. S. 325, 336–340 (1983). The debates on the Act chronicle the alarming insecurity of life, liberty, and property in the Southern States, and the refuge that local authorities extended to the authors of these outrageous incidents:

> "While murder is stalking abroad in disguise, while whippings and lynchings and banishing have been visited upon unoffending American citizens, the local administrations have been found inadequate or unwilling to apply the proper corrective. Combinations, darker than the night that hides them, conspiracies, wicked as the worst of felons could devise, have gone unwhipped of justice. Immunity is given to crime, and the records of public tribunals are searched in vain for any evidence of effective redress." Cong. Globe, 42d Cong, 1st Sess., 374 (1871) (remarks of Rep. Lowe).[36]

---

[36] See also Cong. Globe, 42d Cong., 1st Sess., 321 (1871) (remarks of Rep. Stoughton); 332 (Rep. Hoar); 369–370 (Rep. Monroe); 389 (Rep. Elliott); 412–413 (Rep. E. Roberts); 428 (Rep. Beatty); 436–440 (Rep. Cobb); 516–517 (Rep. Shellabarger); 606 (Sen. Pool); 654 (Sen. Osborn); 691 (Sen. Edmunds).

By providing a remedy for the violation of constitutional rights, Congress hoped to restore peace and justice to the region through the subtle power of civil enforcement.

The atrocities that concerned Congress in 1871 plainly sounded in tort. Relying on this premise we have found tort analogies compelling in establishing the elements of a cause of action under § 1983, *Monroe* v. *Pape,* 365 U. S., at 187, and in identifying the immunities available to defendants, *Briscoe* v. *LaHue,* 460 U. S., at 330; *City of Newport* v. *Fact Concerts, Inc.,* 453 U. S. 247, 258 (1981); *Pierson* v. *Ray,* 386 U. S. 547, 553–557 (1967). As we have noted, however, the § 1983 remedy encompasses a broad range of potential tort analogies, from injuries to property to infringements of individual liberty.

Among the potential analogies, Congress unquestionably would have considered the remedies established in the Civil Rights Act to be more analogous to tort claims for personal injury than, for example, to claims for damages to property or breach of contract. The unifying theme of the Civil Rights Act of 1871 is reflected in the language of the Fourteenth Amendment [37] that unequivocally recognizes the equal status of every *"person"* subject to the jurisdiction of any of the several States. The Constitution's command is that all *"persons"* shall be accorded the full privileges of citizenship; no *person* shall be deprived of life, liberty, or property without due process of law or be denied the equal protection of the laws. A violation of that command is an injury to the individual rights of the person.

---

[37] "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U. S. Const., Amdt. 14, § 1.

Relying on the language of the statute, the Court of Appeals for the Fourth Circuit has succinctly explained why this analogy is persuasive:

> "In essence, § 1983 creates a cause of action where there has been injury, under color of state law, to the person or to the constitutional or federal statutory rights which emanate from or are guaranteed to the person. In the broad sense, every cause of action under § 1983 which is well-founded results from 'personal injuries.'" *Almond* v. *Kent*, 459 F. 2d 200, 204 (1972).[38]

Had the 42d Congress expressly focused on the issue decided today, we believe it would have characterized § 1983 as conferring a general remedy for injuries to personal rights.

The relative scarcity of statutory claims when § 1983 was enacted makes it unlikely that Congress would have intended to apply the catchall periods of limitations for statutory claims that were later enacted by many States. Section 1983, of course, is a statute, but it only provides a remedy and does not itself create any substantive rights. *Chapman* v. *Houston Welfare Rights Organization*, 441 U. S. 600, 617–618 (1979). Although a few § 1983 claims are based on statutory rights, *Maine* v. *Thiboutot*, 448 U. S. 1, 4–8 (1980), most involve much more. The rights enforceable under § 1983 include those guaranteed by the Federal Government in the Fourteenth Amendment: that every person within the United States is entitled to equal protection of the laws and to those "fundamental principles of liberty and justice" that are contained in the Bill of Rights and "lie at the base of all our civil and political institutions."[39] These guarantees of

---

[38] See also *McCausland* v. *Mason County Board of Education*, 649 F. 2d 278, 279 (CA4), cert. denied, 454 U. S. 1098 (1981). Cf. *Runyon* v. *McCrary*, 427 U. S. 160, 179–182 (1976) (affirming Court of Appeals' reliance on statute of limitations for "personal injuries" actions in 42 U. S. C. § 1981 claim).

[39] *Hebert* v. *Louisiana*, 272 U. S. 312, 316 (1926); *Powell* v. *Alabama*, 287 U. S. 45, 67 (1932); *Duncan* v. *Louisiana*, 391 U. S. 145, 148 (1968).

liberty are among the rights possessed by every individual in a civilized society, and not privileges extended to the people by the legislature.[40]

Finally, we are satisfied that Congress would not have characterized § 1983 as providing a cause of action analogous to state remedies for wrongs committed by public officials. It was the very ineffectiveness of state remedies that led Congress to enact the Civil Rights Acts in the first place.[41] Congress therefore intended that the remedy provided in § 1983 be independently enforceable whether or not it duplicates a parallel state remedy. *Monroe* v. *Pape*, 365 U. S., at 173. The characterization of all § 1983 actions as involving claims for personal injuries minimizes the risk that the choice of a state statute of limitations would not fairly serve the federal interests vindicated by § 1983. General personal injury actions, sounding in tort, constitute a major part of the total volume of civil litigation in the state courts today,[42] and probably did so in 1871 when § 1983 was enacted. It is most unlikely that the period of limitations applicable to such claims ever was, or ever would be, fixed in a way that would discriminate against federal claims, or be inconsistent with federal law in any respect.

---

[40] "It is a fundamental principle of law that while the citizen owes allegiance to the Government he has a right to expect and demand protection for life, person, and property. But we are not compelled to rest upon this inherent and undeniable right to protect our citizens. The Constitution of the United States contains an express grant of power coupled with an imperative injunction for its exercise." Cong. Globe, 42d Cong., 1st Sess., 322 (1871) (Rep. Stoughton). See also *id.*, at 339 (Rep. Kelley); 367–368 (Rep. Sheldon); 382 (Rep. Hawley); 475–476 (Rep. Dawes); 482 (Rep. Wilson); 691 (Sen. Edmunds).

[41] See *supra*, at 276–277. Also see the legislative history related in *Patsy* v. *Board of Regents*, 457 U. S. 496, 503–505 (1982); *Mitchum* v. *Foster*, 407 U. S. 225, 240–242 (1972); *McNeese* v. *Board of Education,* 373 U. S. 668, 671–672 (1963); *Monroe* v. *Pape*, 365 U. S. 167, 172–180 (1961); *id.*, at 196, and n. 5 (Harlan, J., concurring).

[42] See National Center for State Courts, State Court Caseload Statistics National Database, 1985.

## V

In view of our holding that § 1983 claims are best characterized as personal injury actions, the Court of Appeals correctly applied the 3-year statute of limitations governing actions "for an injury to the person or reputation of any person." N. M. Stat. Ann. § 37–1–8 (1978). The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE POWELL took no part in the consideration or decision of this case.

JUSTICE O'CONNOR, dissenting.

Citing "practical considerations," the Court today decides to jettison a rule of venerable application and adopt instead one "simple, broad characterization of all § 1983 claims." *Ante,* at 272. Characterization of § 1983 claims is, I agree, a matter of federal law. But I see no justification, given our longstanding interpretation of 42 U. S. C. § 1988 and Congress' awareness of it, for abandoning the rule that courts must identify and apply the statute of limitations of the state claim most closely analogous to the particular § 1983 claim. In declaring that all § 1983 claims, regardless of differences in their essential characteristics, shall be considered most closely analogous to one narrow class of tort, the Court, though purporting to conform to the letter of § 1988, abandons the policies § 1988 embodies. I respectfully dissent.

## I

The rule that a federal court adjudicating rights under § 1983 will adopt the state statute of limitations of the most closely analogous state-law claim traces its lineage to *M'Cluny* v. *Silliman,* 3 Pet. 270 (1830), *Campbell* v. *Haverhill,* 155 U. S. 610 (1895), and *O'Sullivan* v. *Felix,* 233 U. S. 318 (1914). These opinions held that where "Congress . . . could have, by specific provision, prescribed a limitation, but no specific provision [was] adduced," *O'Sullivan* v. *Felix,*

*supra,* at 322, "Congress . . . intended to subject such action to the general laws of the State applicable to actions of a similar nature" and "intended that the remedy should be enforced in the manner common to like actions within the same jurisdiction," *Campbell* v. *Haverhill, supra,* at 616. With respect to the borrowing of state law in § 1983 claims, Congress explicitly provided that, absent a suitable federal law provision,

> "the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction . . . is held . . . shall be extended to and govern the said courts in the trial and disposition of the cause." 42 U. S. C. § 1988.

This Court has consistently interpreted § 1988 as instructing that the rule applicable to the analogous state claim shall furnish the rule of decision "so far as the same is not inconsistent with the Constitution and the laws of the United States." *Ibid.* See, *e. g., Board of Regents* v. *Tomanio,* 446 U. S. 478 (1980); *Robertson* v. *Wegmann,* 436 U. S. 584 (1978); *Johnson* v. *Railway Express Agency, Inc.,* 421 U. S. 454 (1975). Cf. *Auto Workers* v. *Hoosier Cardinal Corp.,* 383 U. S. 696 (1966).

In *Johnson* v. *Railway Express Agency, supra,* the Court described the policies behind Congress' decision to borrow the most appropriate state limitations period:

> "Although any statute of limitations is necessarily arbitrary, the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting prosecution of stale ones. . . . In borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit . . . on the prosecution of a closely analogous claim." 421 U. S., at 463–464.

See also *Board of Regents* v. *Tomanio, supra; Bell* v. *Morrison,* 1 Pet. 351, 360 (1828) (Story, J.) (statutes of limitations guard against "stale demands, after the true state of the transaction may have been forgotten").  Plainly the legislative judgment to which this Court has traditionally deferred is not some purely arbitrary imposition of a conveniently uniform time limit.  For example, a legislature's selection of differing limitations periods for a claim sounding in defamation and one based on a written contract is grounded in its evaluation of the characteristics of those claims relevant to the realistic life expectancy of the evidence and the adversary's reasonable expectations of repose.  See *United States* v. *Kubrick,* 444 U. S. 111, 117 (1979); *Burnett* v. *New York Central R. Co.,* 380 U. S. 424, 426–427 (1965). See, *e. g.,* 42 Pa. Cons. Stat. Ann. (Purdon, vol. covering §§ 101–1700, 1981), pp. xvi–xvii (limitations periods revised "to conform to the modern principle that claims based on conduct, and hence heavily relying on unwritten evidence, should have relatively short statutes of limitations, so as to bring them to trial . . . before memories have faded").

Despite vocal criticism of the "confusion" created by individualized statutes of limitations, most Federal Courts of Appeals and state courts have continued the settled practice of seeking appropriate factual analogies for each genus of § 1983 claim.  See, *e. g., Gashgai* v. *Leibowitz,* 703 F. 2d 10 (CA1 1983); *McClam* v. *Barry,* 225 U. S. App. D. C. 124, 697 F. 2d 366 (1983), overruled on other grounds, *Brown* v. *United States,* 239 U. S. App. D. C. 345, 742 F. 2d 1498 (1984); *Blake* v. *Katter,* 693 F. 2d 677 (CA7 1982); *White* v. *United Parcel Service,* 692 F. 2d 1 (CA5 1982); *Kilgore* v. *City of Mansfield, Ohio,* 679 F. 2d 632 (CA6 1982); *Polite* v. *Diehl,* 507 F. 2d 119 (CA3 1974) (en banc); *Miller* v. *City of Overland Park,* 231 Kan. 557, 646 P. 2d 1114 (1982); *Sena School Bus Co.* v. *Santa Fe Board of Education,* 677 P. 2d 639 (N. M. App. 1984); *Arquette* v. *Hancock,* 656 S. W. 2d 627 (Tex. App. 1983); *Moore* v. *McComsey,* 313 Pa. Super.

264, 459 A. 2d 841 (1983); *Leese* v. *Doe,* 182 N. J. Super. 318, 440 A. 2d 1166 (1981). As these courts have recognized:

"The variety of possible claims that might be brought under section 1983 is unlimited, ranging from simple police brutality to school desegregation cases. To impose one statute of limitations for actions so diverse would be to disregard the unanimous judgments of the states that periods of limitations should vary with the subject matter of the claim. While the present system of reference to these many state limits is not perfect in operation, it surely preserves some of the judgments that have been made about what appropriate periods of limitation should be for causes of action diverse in nature." Note, Choice of Law Under Section 1983, 37 U. Chi. L. Rev. 494, 504 (1970).

## II

The majority concedes that "[b]y adopting the statute governing an analogous cause of action under state law, federal law incorporates the State's judgment on the proper balance between the policies of repose and the substantive policies of enforcement embodied in the state cause of action." *Ante,* at 271. Yet the Court posits, without any serious attempt at explanation, that a § 1983 claim differs so fundamentally from a state-law cause of action that "any analogies to those causes of action are bound to be imperfect." *Ante,* at 272. The only fundamental differences the Court identifies— § 1983's "uniqueness," its "high purposes," its "supplementary" nature—in no way explain the determination that a single inflexible analogy should govern what the Court concedes is the "wide diversity" of claims the § 1983 remedy embraces. *Ante,* at 275.

Thus with hardly a backward look, the majority leaves behind a century of precedent. See, *e. g., Campbell* v. *Haverhill,* 155 U. S. 610 (1895). Inspired by "the federal interests in uniformity, certainty, and the minimization of unnecessary

litigation," the Court suddenly discovers that § 1988 "is fairly construed as a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims." *Ante*, at 275. This fact, of course, escaped the drafters of the Civil Rights Acts, who referred the courts only to general state-law principles. Groping to discern what the 42d Congress would have done had it "expressly focused on the issue decided today," the Court "believes" that "the 42d Congress . . . would have characterized § 1983 as conferring a general remedy for injuries to personal rights." *Ante*, at 278.

The Court's all-purpose analogy is appealing; after all, every compensable injury, whether to constitutional or statutory rights, through violence, deception, or broken promises, to the person's pocketbook, person, or dignity, might plausibly be described as a "personal injury." But so sweeping an analogy is no analogy at all. In all candor, the Court has perceived a need for uniformity and has simply seized the opportunity to legislate it. The Court takes this step even though a number of bills proposed to recent Congresses to standardize § 1983 limitations periods have failed of enactment, see, *e. g.*, S. 436, 99th Cong., 1st Sess. (1985); S. 1983, 96th Cong., 1st Sess. (1979); H. R. 12874, 94th Cong., 2d Sess. (1976), a fact that the Court would normally interpret as a persuasive indication that Congress does not agree that concerns for uniformity dictate a unitary rule. See *Ford Motor Credit Co.* v. *Milhollin*, 444 U. S. 555, 565 (1980) ("[C]aution must temper judicial creativity in the face of . . . legislative silence"); *Robertson* v. *Wegmann*, 436 U. S., at 593, and n. 11; *Auto Workers* v. *Hoosier Cardinal Corp.*, 383 U. S., at 704.

As well as co-opting federal legislation, the Court's decision effectively forecloses legislative creativity on the part of the States. Were a State now to formulate a detailed statutory scheme setting individualized limitations periods for various § 1983 claims, drawing upon policies regarding the timeliness of suits for assault, libel, written contract, employment dis-

putes, and so on, the Supremacy Clause would dictate that the blunt instrument announced today must supersede such legislative fine-tuning. Presumably, today's decision would pre-empt such legislation even if the State's limitations period in a given case were *more* generous than the tort rule that the Court today mandates invariably shall apply. In the case of *Blake* v. *Katter*, 693 F. 2d 677 (CA7 1982), for example, a plaintiff who claimed deprivation of liberty through false arrest enjoyed the benefit of Indiana's generous 5-year statute for claims against public officials. The same plaintiff would now find his § 1983 cause of action foreclosed by the comparatively meager 2-year statute governing injuries to the person. *Id.*, at 679–680.

In exchange for the accrued, collective wisdom of many legislatures, *Bell* v. *Morrison*, 1 Pet., at 360, the Court gains only a half measure of uniformity. The Court has heretofore wisely disavowed uniformity as a value not warranting "displacement of state statutes of limitations for civil rights actions." See *Board of Regents* v. *Tomanio*, 446 U. S., at 489; *Robertson* v. *Wegmann, supra*, at 584–585, and n. 11. True, the Court's decision means that all § 1983 claims in a given State must be brought within a single set period. Yet even the promise of uniformity within each State is illusory. In achieving statewide symmetry among civil rights claims the Court creates fresh problems of asymmetry that are of far greater moment to the local practitioner. Any lawyer knows that § 1983 claims do not occur in splendid isolation; they are usually joined with claims under state tort or contract law arising out of the same facts. In the end, today's decision saves neither judges nor local practitioners any headaches, since for 150 years characterization of the state law claims with reference to the relevant facts has been a routine prerequisite to establishing the applicable statute of limitations. As one state high court noted:

> "We do not believe that it was the intent of Congress in enacting § 1983 to establish a cause of action with a

different statute of limitations than that provided by the state for common law or state statutory action on the identical set of facts." *Miller* v. *City of Overland Park*, 231 Kan., at 560–562, 646 P. 2d, at 1116–1118.

Accord, *Campbell* v. *Haverhill*, 155 U. S., at 616. Such will be the inevitable result of the Court's decision. For example, under the newly revised Pennsylvania statutory scheme at issue in today's companion case, *Springfield Township School District* v. *Knoll, post*, p. 288, a state law claim for libel or slander will be stale in one year, 42 Pa. Cons. Stat. § 5523(1)(1982), but a § 1983 claim based on the same facts can still be filed after two years, § 5524(2). More puzzling still, a § 1983 claim for violation of constitutional rights arising out of a breach of contract will be foreclosed in two years but its state law counterpart based on the identical breach will remain fresh and litigable at six years. § 5527(2). This sort of half-baked uniformity is a poor substitute for the careful selection of the appropriate state law analogy.

Today's decision does not so much resolve confusion as banish it to the lower courts. The Court's new analogy lacks any magical power to conjure uniformity where diversity is the natural order. In fact, the rule the Court adopts failed in application literally before the ink of the Tenth Circuit's decision was dry. The decision of the Court of Appeals for the Tenth Circuit in this case, affirmed today, was only one of four handed down on the same day in a valiant attempt to fix limitations periods for the entire Tenth Circuit. Kansas law conveniently supplied a 2-year statute for "injury to the rights of another," see *Hamilton* v. *City of Overland Park*, 730 F. 2d 613 (1984); but Utah law contained no such provision, see *Mismash* v. *Murray City*, 730 F. 2d 1366 (1984) (selecting Utah's 4-year residuary statute, absent any statute for personal injury). Colorado law defied the newly minted rule by supplying not one but *two* periods that govern various injuries to personal rights. *McKay* v. *Hammock*, 730 F. 2d 1367 (1984). The Tenth Circuit resolved its dilemma by

declaring both limitations periods "irrelevant" and instead selecting Colorado's 3-year residuary statute. *Id.*, at 1370. As these cases demonstrate, there is no guarantee state law will obligingly supply a limitations period to match an abstract analogy that may have little relevance to the forum State's limitations scheme.

As Professor Mishkin remarked regarding federal choice-of-law rules, often "the call for 'uniformity'" is not so much grounded in any practical necessity as in a "desire for symmetry of abstract legal principles and a revolt against the complexities of a federated system." Mishkin, The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision, 105 U. Pa. L. Rev. 797, 813 (1957). See also Hart, The Relations Between State and Federal Law, 54 Colum. L. Rev. 489, 539–540 (1954) (we must have "the wit not to be deluded by little-minded assumptions about the value of uniformity and symmetrical organization charts," *id.*, at 542). Though the task of characterization is admittedly not "uncomplicated," *ante*, at 275, it is nevertheless a routine feature of state procedural law, a task that is handled daily by the same judges, lawyers, and litigants as rely on § 1983, often in the same actions. It was Congress' choice in 1866, when it incorporated by reference "the common law, as modified . . . by . . . the statutes of the [forum] State," to forgo legislating a simplistic rule and to entrust judges with the task of integrating a federal remedy into a federal system.

Therefore, I would reverse the Court of Appeals' scholarly but ultimately flawed attempt to impose a single state limitations period for all § 1983 claims. Because I would apply the statute of limitations New Mexico applies to state claims directly analogous to the operative facts of this case, I respectfully dissent.