**Carlos Alberto Mojica MORALES, et al., Plaintiff,**

v.

**Sgt. Rafael Llera FANTAUZZI, et al., Defendants**

**No. Civ. 04–2255(JP).**

United States District Court, D. Puerto Rico.

July 7, 2005.

Fredeswin Perez–Caballero, Hernandez Sanchez Law Firm, San Juan, PR, for Plaintiffs.

Lavinia Aparicio–Lopez, Commonwealth Department of Justice, San Juan, PR, for Defendants.

## *OPINION AND ORDER*

PIERAS, Senior District Judge.

## I. INTRODUCTION

The Court has before it Defendants' Motion to Dismiss (docket No. 10) and Plaintiff's opposition thereto (docket No. 13). For the foregoing reasons, the Court hereby **GRANTS** Defendants' motion to dismiss.

## II. LEGAL STANDARD

According to the Supreme Court, a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Moreover, according to the First Circuit, the Court must "treat all allegations in the complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff." *Rumford Pharmacy, Inc. v. City of East Providence*, 970 F.2d 996, 997 (1st Cir.1992). In addition, a "complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as relief is possible under any set of facts that could be established consistent with the allegations." *González–Pérez v. Hospital Interamericano De Medicina Avanzada*, 355 F.3d 1, at 5 (1st Cir.2004). Finally, under Federal Rule of Civil Procedure 8(f), "[a]ll pleadings shall be so construed as to do substantial justice."

## III. FACTUAL ALLEGATIONS

1. On December 11, 2002, around 10:30 p.m., Plaintiff Carlos Alberto Mojica, was driving his car on Road # 2, intersection with the Martinez Nadal Expressway, in the vicinity of Guaynabo,

2. Plaintiff was ordered to pull his car over by co-Defendant Rafael Llera Fantauzzi.

3. Co–Defendant Llera Fantauzzi requested Plaintiff's and the vehicle's license and went back to his patrol car.

4. After waiting for about 30 minutes, when co-Defendant Llera Fantauzzi did not return from his patrol car, Plaintiff approached him to ask the reason why he had been stopped.

5. Co–Defendant Llera Fantauzzi stated that Plaintiff had crossed a red light and told Plaintiff he was going to give him a traffic ticket.

6. Co–Defendant Llera Fantauzzi did not have any traffic ticket notebooks in his patrol car and had requested the assistance of another patrol car.

7. At that moment, the patrol car co-Defendant Llera Fantauzzi had summoned arrived.

8. The second patrol car was being driven by co-Defendant Héctor Pérez Cuevas.

9. Co–Defendant Llera Fantauzzi told Perez Cuevas to give Plaintiff a ticket for running a red light.

10. Plaintiff informed both co-Defendants he had not crossed a red light and requested not to be given the ticket.

11. In an aggressive and disrespectful manner, Co–Defendant Llera Fantauzzi answered Plaintiff: "Are you a moron? Are you tough (guapo)"?

12. Plaintiff told the co-Defendants that he did not want any problems, excused himself and requested co-Defendant Llera Fantauzzi not to be aggressive.

13. Co–Defendant Llera Fantauzzi answered: "Do you want me to arrest you?"

14. Co–Defendant Llera Fantauzzi then approached Plaintiff and hit him twice in his chest.

15. Co–Defendant Llera Fantauzzi told co-Defendant Perez Cuevas: "Let's arrest this motherfucker (cabrón)", and slapped Plaintiff in the face.

16. Co–Defendant Llera Fantauzzi then punched Plaintiff in the neck, grabbed his arm, threw Plaintiff against his patrol car and continued punching his back and neck.

17. Co–Defendant Pérez Cuevas then proceeded to handcuff Plaintiff.

18. Co–Defendant Llera Fantauzzi wrapped an arm around his neck and began to asphyxiate Plaintiff.

19. Plaintiff tried to beg for mercy and urinated in his pants.

20. Co–Defendant Llera Fantauzzi tightened Plaintiff's handcuffs to the point of bruising his wrists.

21. Co–Defendant Llera Fantauzzi then put Plaintiff in his patrol car and proceeded to drive to the Juan Domingo Police Station.

22. After arriving to the Police Station, an unidentified police officer told co-Defendant Llera Fantauzzi to take the handcuffs off Plaintiff and co-Defendant Llera Fantauzzi replied to let him be.

23. Plaintiff was held handcuffed in the station until 1:30 a.m., when he was released.

24. Co–Defendant Perez Cuevas issued a traffic ticket to Plaintiff, which was later dismissed.

25. To hide co-Defendant's Llera Fantauzzi's actions, co-Defendants Llera Fantauzzi, Guerrido Flores and Pérez Cuevas filed charges against Plaintiff for disturbing the peace, for the incident above described on March 11, 2003.

26. These charges were dismissed on July 17, 2003.

27. The same co-Defendants filed a second set of charges against Plain-

tiff for the same incident—for resisting arrest and obstruction of public authority—on August 20, 2003.

28. These charges were dismissed on April 27, 2004.

29. The Complaint was filed on November 12, 2004.

## IV. CONCLUSIONS OF LAW

Defendants now moves to dismiss the claims against them, alleging they are time-barred. The Court agrees.

The statute of limitations that applies to a tort case arising under 42 U.S.C. § 1983 is the one-year period established in Article 1868, 31 P.R. Laws. Ann. § 5298, of the Puerto Rico Civil Code. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (holding that the applicable limitations period is the forum state's statute of limitations). In this case, Defendants allege that the statute of limitations began to run on December 11, 2002, at the time his rights were first violated when he was allegedly beaten and arrested. Plaintiff disagrees with Defendants, and alleges instead that the statute did not begin to run until April 27, 2004, after the second set of charges was dismissed. The Court agrees with Defendants.

For purposes of determining when a claimant knew or had reason to know of the alleged injury, the Court looks to the common law cause of action most closely analogous to the constitutional right at stake. *Heck v. Humphrey*, 512 U.S. 477, 484, 114 S.Ct. 2364, 2371, 129 L.Ed.2d 383 (1994); *Albright v. Oliver*, 510 U.S. 266, 269–70, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994).

Although the Complaint does not explicitly state the constitutional violation Plaintiffs are suing under, the Court finds that the Complaint could have been brought under either a Fourth Amendment false arrest claim or a Fourteenth Amendment malicious prosecution claim. The interest at stake in a malicious prosecution claim is the right to be free from deprivations of liberty interests caused by unjustifiable criminal charges and procedures. In contrast, false arrests infringe upon the right to be free from restraints on bodily movement. The remedies available in the two tort actions mirror the different interests at stake. Damages for false arrest are restricted to the time period between the initial detention and the issuance of legal process, whereas the tort of malicious prosecution contemplates general damages as well as compensation for any arrest and imprisonment preceding the termination of the criminal proceeding. *Heck*, 512 U.S. at 484, 114 S.Ct. at 2371.

The First Circuit has found that the critical inquiry which must be made which distinguishes malicious prosecution from false arrest is whether the arrests were made pursuant to a warrant. *Calero–Colon v. Betancourt–Lebron*, 68 F.3d 1 (1st Cir.1995), *quoting Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 115–116 (2d Cir. 1995). As a general rule, an unlawful arrest pursuant to a warrant will be more closely analogous to the common law tort of malicious prosecution. An arrest warrant constitutes legal process, and it is the tort of malicious prosecution that permits damages for confinement pursuant to legal process. On the other hand, wrongful warrantless arrests have been held to more closely resemble the tort of false arrest, whose time for accrual begins to run from the time of the arrest. *Id.* The present Complaint therefore seems to the Court to be brought under a Fourth Amendment right to be free from any unreasonable seizure of their persons rather than a Fourteenth Amendment claim

for procedural due process, since the existence of a warrant has not been alleged.

 This being the case, the Court finds that Plaintiff's statute of limitations began to run from the time he was arrested, on December 11, 2002. *See Gauger v. Hendle*, 349 F.3d 354, 360–361 (7th Cir.2003) (determining that for an allegation of arrest that violated the Fourth Amendment, the statute of limitations begins to run when the arrest is made); *see also González v. Entress*, 133 F.3d 551, 552–53 (7th Cir.1998); *Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 558–59 (10th Cir. 1999); *Montgomery v. De Simone*, 159 F.3d 120, 126 n. 5 (3d Cir.1998); *Hall v. Geary Cty. Bd. of Cty. Com'rs*, 2001 WL 694082, *1 (10th Cir.2001). The instant claim was filed on November 12, 2004, almost two years after the incidents occurred, and is therefore time-barred.

Even assuming *arguendo*, that Plaintiff did not know that his rights had been violated at the time he was arrested, *see Calero–Colon*, 68 F.3d at 4–5,[1] which is unlikely, certainly a notice of injury was readily apparent at the time Plaintiff's release from the Police Headquarters on the night in question after he was allegedly beaten on December 11, 2002, or at the very least, when the first set of charges were filed on March 11, 2003. Even if the Court were to take the most liberal view of when Plaintiff knew his rights had been violated—when the first set of charges were dismissed on July 17, 2003 and later re-filed on August 20, 2003—his claims would still be time-barred, as the Complaint was not filed until over one year

after that, on November 12, 2004. Plaintiff's argument is therefore inapposite and his claims are time-barred.

## IV. CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Defendants' motions to dismiss, and **DISMISSES** this case, **WITH PREJUDICE.**

**IT IS SO ORDERED.**

---

**1.** Where Judge Lynch, in a concurrence stated that ... "I write separately to stress my understanding that in Fourth Amendment claims under § 1983 arising out of a warrantless arrest the statute of limitations may typically, but does not necessarily, begin to run at the time of arrest. There may be circumstances in which plaintiffs neither knew, nor had reason to know, at the time of their warrantless arrests that they had suffered a constitutional injury and so the statute would not begin to run upon arrest". *Calero–Colon v. Betancourt*, 68 F.3d 1, 4 (1st Cir.1995). The Court finds no such circumstances are present here.