William B. DAVIS, James D. Davis, and Robert P. Davis, Plaintiffs,

v.

Colin SMITH, Ronald Schiller and Morris D. Krumhorn, Defendants.

No. 84 C 6009.

United States District Court, N.D. Illinois, E.D.

Dec. 10, 1985.

Richard P. Glovka, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for plaintiffs.

George B. Collins, Collins & Uscian, Chicago, Ill., for Smith & Krumhorn.

Arthur W. Hahn, Bonita L. Stone, Katten, Muchin, Zavis, Pearl, Greenberger & Galler, Chicago, Ill., for Schiller.

### MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This matter is before the court upon defendants Krumhorn and Smith's motion to dismiss. For the reasons hereinafter stated, defendants' motion is denied. In 1980 plaintiffs filed a five-count complaint against K & S Commodities, Inc. ("K & S"), alleging violations of the fraud provisions of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 6(b) (Count I), common law fraud (Count II), negligence (Count III), violation of fiduciary duty (Count IV) and breach of contract (Count V) (Case No. 80 C 4004). The bulk of the complaint alleged a fraudulent scheme wherein plaintiffs were told they could continue trading commodity futures contracts even though their accounts were undermargined and in a deficit position. Plaintiffs further alleged that, suddenly, a short time later, they were told that their accounts were frozen and all they could do was remove both sides of their "spread" transactions. As a result, plaintiffs suffered great losses when they were forced to liquidate their accounts. A motion to dismiss the action for failure to state a fraud under the CEA was denied by Chief Judge McGarr on February 25, 1981. The case was subsequently transferred to this court. Matters pro-

ceeded with various rulings on non-dispositive pre-trial matters made by this court.

Then, in July of 1984, plaintiffs filed a complaint under the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961–1968 (1984) ("RICO"), based upon the same facts alleged in their 1980 complaint against K & S. Plaintiffs named Colin Smith, an account executive at K & S, Donald Schiller, secretary of K & S, and Morris Krumhorn, chief operating officer of K & S, as defendants (Case No. 84 C 6009). Plaintiff's RICO claim was found to be related to plaintiffs' earlier filed complaint and is now the subject of defendants' motion to dismiss. Defendants claim that plaintiffs' RICO claim must be dismissed because RICO does not extend to a violation of the CEA and the claim is barred by the statute of limitations.

### Applicability of RICO to Commodities Fraud

Defendants' first objection, that RICO does not extend to a violation of the CEA, does not call for dismissal of the complaint. Paragraphs 1–24 of the complaint describe acts of mail and wire fraud sufficient to satisfy the statutory requirements of RICO. The law is clear that a RICO claim may be predicated upon a claim of nearly any type of fraud. *Haroco v. American National Bank and Trust Co. of Chicago*, 747 F.2d 384 (7th Cir.1984) *aff'd*, —— U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (per curiam). *See also Sedima, S.P.R.L., v. Imrex Co., Inc.*, ——

U.S. ——, 105 S.Ct. 3275, 3287, 87 L.Ed.2d 346 (1985); *Schacht v. Brown*, 711 F.2d 1343 (7th Cir.) *cert. denied*, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983). The mail and wire fraud statutes, violations of which satisfy the "pattern of racketeering activity" of RICO, 18 U.S.C. 1961(1) and (5), also prohibit "any scheme or artifice to defraud." 18 U.S.C. §§ 1341, 1343 (1984).[1] Simply because the fraud alleged in the instant case involves a claim of fraud in the sale of commodity futures contracts does not mean that RICO cannot be invoked.[2] In fact, *Taylor v. Bear Stearns & Co.*, 572 F.Supp. 667 (N.D.Ga.1983), cited by defendants in support of their position, also indicates that a RICO claim may exist for fraud in the sale of commodities futures contracts as long as the acts of fraud are plead with sufficient particularity. *Id.* at 683.

In the instant case, various paragraphs of the complaint allege acts of mail and wire fraud. Paragraphs 18, 19 and 21 describe use of the mails and telephone in furtherance of the alleged scheme to defraud. Paragraph 18 alleges that plaintiff William Davis and defendant Krumhorn had a telephone conversation on February 27, 1980 wherein Krumhorn, without mentioning margin requirements, asked Davis to provide Krumhorn a promissory note in the amount of $60,000. Paragraph 19 alleges that as a result of that conversation, Davis sent Krumhorn the requested note

1. In *Sedima, S.P.R.L. v. Imrex Co., Inc.*, —— U.S. ——, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the plaintiff's RICO claims were predicated on wire and mail fraud in addition to common law claims of unjust enrichment, conversion, breach of contract and breach of fiduciary duty. The Supreme Court acknowledged the wide range of activities proscribed under RICO, noting: "The 'extraordinary' uses to which civil RICO has been put appear to be primarily the result of the breadth of the predicate offenses, in particular the inclusion of wire, mail and securities fraud ..." *Sedima* at 3787.

2. RICO clearly applies to several types of fraud. In *Haroco v. American National Bank and Trust Co. of Chicago*, 747 F.2d 384 (7th Cir.1984), *aff'd*, —— U.S. ——, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (per curiam), the plaintiff sued the bank,

alleging common law fraud and RICO in connection with the bank's computation of the interest rate on certain loans. The Seventh Circuit held that the plaintiff had stated a cognizable claim under RICO, the predicate offenses being incidences of mail fraud. The court acknowledged the broad scope of RICO as it relates to fraud:

Congress deliberately cast the net of liability wide, being more concerned to avoid opening loopholes through which the minions of organized crime might crawl to freedom than to avoid making garden-variety frauds actionable in federal treble-damage proceedings—the price of eliminating all possible loopholes.

*Haroco* at 390 (citing *Sutliff, Inc. v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir. 1984)).

via United States mail. Paragraph 21 alleges that defendant Schiller telephoned Davis on or about March 25, 1980, informing him that his account was frozen and plaintiffs would only be allowed to remove both sides of a "spread" transaction.

### Pleading Fraud with Particularity

These paragraphs also demonstrate that defendants' further objection that plaintiffs have not plead fraud with sufficient particularity in accordance with Fed.R.Civ.P. 9(b), is without merit. The paragraphs adequately allege the facts upon which plaintiffs base their claim of fraud and set forth the facts with sufficient particularity so as to allow defendants to frame a responsive pleading. 5 Wright & Miller, Federal Practice and Procedure §§ 1297–1298 (1969). *See Sutliff v. Donovan Companies, Inc.*, 727 F.2d 648, 654 (7th Cir.1984); *Schact v. Brown*, 711 F.2d 1343, 1352 n. 7 (7th Cir.), *cert. denied*, 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983). These paragraphs, alleging use of the mails and wire in perpetration of the alleged fraud, sufficiently describe the pattern of racketeering required by RICO.

### Statute of Limitations Applicable to RICO

█ Defendants next claim that, even assuming plaintiffs have a valid RICO claim, it is barred by the statute of limitations. The RICO statute contains no specific limitations period. Traditionally, where a federal statute contains no specific statute of limitations, the federal courts have looked to the most appropriate limitations period provided by state law. *Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). The Seventh Circuit has stated that the applicable limitations period is that which a court of the

state where the federal court sits would apply had the action been brought there. *Beard v. Robinson*, 563 F.2d 331, 334 (7th Cir.1977), *cert. denied*, 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978); *see Burnett v. Grattan*, 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984).[3] State limitations periods will not be applied, however, if their application would be inconsistent with the policies underlying the federal cause of action. *Movement For Opportunity, Etc. v. General Motors*, 622 F.2d 1235 (7th Cir.1980). This final consideration emphasizes "the predominance of the federal interest" in the borrowing process. *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985).

The parties have suggested three different limitations periods to apply to this cause of action. Defendants argue that plaintiffs' claim is based on a violation of the CEA and therefore the CEA's statute of limitations must be applied. · Since the antifraud provisions of the CEA do not specify any limitation period, defendants suggest that the Illinois three-year limitations period governing securities actions, Ill.Rev.Stat. ch. 121½, § 137.13(D), is most analogous to the rights asserted in plaintiffs' claim. Alternatively, defendants argue that the two-year Illinois statute governing statutory penalties, Ill.Rev.Stat. ch. 110, § 13–202, should be applied. Defendants reason that, since RICO provides for treble damages and such damages are deemed a penalty under Illinois law, this two-year limitations period would also be appropriate. Plaintiffs, on the other hand, maintain that Illinois' five-year statute for common-law fraud, Ill.Rev.Stat. ch. 110, § 13–205, should govern their RICO claim.

The various state limitations periods suggested by the parties illustrate the difficulty in determining the proper limitations

---

**3.** Illinois presently has no state statute containing elements similar to those comprising a RICO offense. This spring, however, the Illinois Senate introduced a bill in the state legislature which parallels RICO in several respects. SB 0646, introduced into the Illinois General Assembly on April 10, 1985, creates new criminal offenses entitled "theft by dealing in stolen property" and "possession of altered property." Like RICO, the proposed act provides for a forfeiture of profits derived from a violation of the act, and creates a civil cause of action for injunctive and treble damage relief. Additionally, the proposed act has a five-year statute of limitations. This bill was subsequently tabled on June 14, 1985.

period for a civil action under RICO.[4] RICO provides a federal remedy in addition to existing state remedies, and proscribes a broad range of conduct, thus rendering it difficult to pidgeon-hole the statute into any one state limitations period. Recently, in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court was confronted by an analogous problem: determining a statute of limitations for lawsuits under 42 U.S.C. § 1983. Like RICO, § 1983 provides a federal forum for injuries resulting from a broad spectrum of conduct, and "almost every ... claim can be favorably analogized to more than one of the ancient common-law forms of action, each of which may be governed by a different statute of limitations." *Wilson* at 1945. The *Wilson* court outlined its basic considerations when determining the appropriate statute of limitations for a § 1983 claim:

[1] We must first consider whether state law or federal law governs characterization of [the] claim for statute of limitation purposes.... [This] is derived from the elements of the cause of action and Congress' purpose in providing it....

[2] If federal law applies, we must next decide whether all § 1983 claims should be characterized in the same way, or whether they should be evaluated differently, depending on the varying factual circumstances and legal theories presented in each case....

[3] Finally, we must characterize the essence of the claim in the pending

case, and decide which state statute provides the most appropriate limiting principle.

*Wilson* at 1943. The Court held that since the thrust of a § 1983 claim was a violation of federal constitutional rights, federal law governed characterization of such claims for statute of limitations purposes. *Id.* at 1944. Noting the uncertainty engendered by this limitations issue, the *Wilson* Court held that a uniform limitations period within each state was necessary to promote the federal interests in "uniformity, certainty, and the minimization of unnecessary litigation." *Id.* at 1947. Accordingly, the Court held that § 1983 claims are best analogized to personal injury actions, and the state limitations periods for those actions should apply to all § 1983 claims. *Id.* at 1949.

■ Guided by the *Wilson* decision and the traditional borrowing practices of federal courts in limitations issues, this court concludes that of the three suggested limitations periods—Illinois Securities Law, statutory penalties, and fraud—the Illinois five-year statute of limitations for fraud is the most analogous to a RICO claim and should be uniformly adopted for all RICO cases.

Federal law governs the characterization of RICO claims for statute of limitations purposes. With its enactment of the RICO statute, Congress created a unique civil cause of action for plaintiffs who have been injured by RICO violations. Both the civil remedies and criminal penalties are defined by federal law.[5] The underlying

---

4. Unlike the civil RICO statute, the criminal provisions of RICO do not provide the courts much difficulty in determining the applicable limitations period. Most courts who have considered the issue have held that the federal statute for non-capitol offenses, 18 U.S.C. § 3282 (1984), which dictates a five-year limitations period, covers criminal prosecutions under RICO. *See United States v. Bethea,* 672 F.2d 407, 419 (5th Cir.1982); *United States v. Forsythe,* 560 F.2d 1127, 1134 (3d Cir.1977); *United States v. Boffa,* 513 F.Supp. 444, 479 (D.Del. 1980); *United States v. Field,* 432 F.Supp. 55, 59 (S.D.N.Y.1977), *aff'd without opinion,* 578 F.2d 1371 (2d Cir.), *cert. dismissed,* 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94 (1978).

5. Although some of the predicate offenses underlying a RICO claim are defined by state law, this fact alone does not preclude recognition of federal law as controlling the characterization of RICO claims for limitations purposes. As the court noted in *United States v. Forsythe,* 560 F.2d 1127, 1135 (3d Cir.1977):

State law offenses are not the gravamen of RICO offenses. RICO was not designed to punish state law violations, it was designed to punish the impact on commerce caused by conduct which meets the statute's definition of racketeering activity. To interpret state law offenses to have more than a definitional purpose would be contrary to the legislative intent and existing state law.

considerations which led the *Wilson* Court to adopt a uniform characterization of § 1983 claims for limitations purposes likewise compel this court to adopt a uniform characterization of RICO claims. This court finds that RICO claims are most analogous to claims of fraud. Of the predicate offenses outlined in the statute, several relate directly to fraud or fraudulent activity.[6] The fact that fraud appears to be the predominant predicate offense in civil RICO claims further supports the uniform adoption of the Illinois limitations period for fraud in all RICO cases.[7] The Illinois limitations period for securities act violations is inappropriate for a uniform statute because, although arguably related to the case at hand, it is too limiting in its subject matter to serve as an appropriate time period for *all* RICO claims.

In *Electronic Relays (India) Pvt. Ltd. v. Pascente,* 610 F.Supp. 648 (N.D.Ill.1985), the court, relying on the Supreme Court's decision in *Wilson v. Garcia, supra,* held that the aspect of civil RICO most emphasized in the statute's legislative history is its treble damages provision. Because Illinois regards treble damages as punitive in nature, the court held that the Illinois two-year limitations period for punitive damages, Ill.Rev.Stat. ch. 110, § 13–202, should apply to all RICO cases. *Electronic Relays, supra* at 650–52. This reasoning was subsequently adopted in *Bolingbrook Properties II v. Irvin,* No. 84 C 10480, slip op. at 4 (N.D.Ill. Aug. 5, 1985) [Available on WESTLAW, DCTU database].[8]

---

6. 18 U.S.C. § 1961(1) lists the predicate offenses for a civil or criminal claim under RICO:

"racketeering activity" means (A) any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzlement from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphenalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), sections 2314 and 2315 (relating to interstate transportation of stolen property), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic); (C) any act which is indictable under the title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds; or (D) any offense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States.

7. The Supreme Court recently remarked:

of the 270 known civil RICO cases at the trial court level, 40% involve securities fraud, 37% common law fraud in a commercial or business setting, and only 9% allegations of criminal activity of a type generally associated with professional criminals.

*Sedima, S.P.R.L. v. Imrex Co., Inc.,* — U.S. —, 105 S.Ct. 3275, 3287 n. 16, 87 L.Ed.2d 346. The Supreme Court obtained these figures from the recent Report of the Ad Hoc Civil RICO Task Force (a division of the ABA Section on Corporate Banking and Business Law). The remaining fourteen percent was broken down as follows: antitrust and unfair competition (4%); bribery and commercial bribery (4%); fraud not related to securities or business transactions (3%); labor (2%); and theft or conversion (1%). Task Force Report at 55–56. In the same footnote, the Court noted that a survey of 132 published opinions by the American Institute of Certified Public Accountants (AICPA) revealed that 57 cases involved securities transactions and 38 involved contract for commercial disputes, but no other category had over 10 decisions. *Id.,* citing AICPA, The Authority to Bring Private Treble-Damage Suits Under "RICO" Should Be Removed 13 (Oct. 10, 1984).

8. *See also Fye v. First National Bank of Niles,* No. 85 C 0700, slip op. at 2 (N.D.Ill. July 30, 1985) [Available on WESTLAW, DCTU database]

This court finds, however, that adoption of the Illinois approach to punitive damages will not necessarily provide district courts with the proper uniform limitations period for RICO claims. Selecting a limitations period in accordance with the state's view of the nature of the remedy instead of the nature of the cause of action could frustrate the very purposes of RICO.[9] Congress emphasized that "RICO is to be liberally construed to effectuate its remedial purposes." Title IX, § 904, 84 Stat. 947. In this court's view, adoption of this limitations period does not give sufficient consideration to the elements of a RICO action and the time frame in which it may take a plaintiff to discover them. The crux of the majority of civil RICO cases appears to be a type of fraud, which is not necessarily discernable within a shorter limitations period.[10] RICO's remedial purposes can be more effectively accommodated by the five-year fraud statute of limitations than the shorter two-year provision addressing civil penalties.[11] Therefore, this court holds that Illinois' statute of limitations governing fraud is the most appropriate limitations period for all civil RICO claims.

The court's adoption of the Illinois fraud statute is supported by the *Wilson* decision, as well as the facts of this case and the traditional analysis governing the borrowing of state limitations periods for federal causes of action. The plaintiffs' complaint essentially alleges that they were lulled into continued trading on their account despite the fact that it was under-margined. Plaintiffs describe acts taken by the defendants in furtherance of this goal and characterize such actions as a scheme to defraud. Defendants correctly note that, in actions for fraud under the CEA, courts have applied the three-year statute of limitations provided by Illinois securities law as these allegations are similar to a claim of fraud in the sale of securities. *See Shelley v. Noffsinger*, 511 F.Supp. 687 (N.D.Ill.1981); *Anvil Investors Ltd. Partnership v. Thornhill Condominiums, Ltd.*, 85 Ill.App.3d 1108, 41 Ill.Dec. 147, 407 N.E.2d 645 (1st Dist.1980). Since the claim is related to a securities claim, an Illinois court would probably choose the securities law statute of limitations over the two-year statute of limitations governing statutory penalties, Ill.Rev.Stat. ch. 110, § 13–202. Although the limitations period governing statutory penalties has been applied in cases where treble damages are provided for, as in this case, the policies behind the Illinois securities law would seem to prevail in a case of this nature over the policies underlying the statutory penalty limitations period. *See Superior Laundry & Linen Supply Co. v. Edmanson-Bock Caterers, Inc.*, 11 Ill.App.2d 132, 136 N.E.2d 610 (1st Dist.1956).

However, even if this court determined that an Illinois court would apply the Illinois securities law limitation period in an analogous case, this would not settle the matter. The court then must consider whether application of the state limitations period would be inconsistent with the policies underlying the federal cause of action.

---

(court assumes two-year statute of limitations for RICO without discussion).

**9.** *Cf. Shorters v. City of Chicago*, 617 F.Supp. 661, 664 (N.D.Ill. 1985) ("test under *Wilson* must be a commonality of *substantive content* and not mere similarity of *language*") (emphasis in original).

Despite its criminal counterpart, the Seventh Circuit has characterized the civil RICO provisions as remedial, not penal, in nature. *See United States v. Cappetto*, 502 F.2d 1351, 1357 (7th Cir.1974), *cert. denied*, 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975); *State Farm Fire & Cas. Co. v. Estate of Caton*, 540 F.Supp. 673, 681–82 (N.D.Ind.1982).

**10.** *Cf. Fustok v. Conticommodity Services, Inc., et al.*, No. 82 Civ. 1538 (MEL) slip op. at n. 6

(S.D.N.Y. Sept. 24, 1985) [Available on LEXIS, Genfed Library, Cases File] [Available on WESTLAW, DCTU database] where the court noted, "It would seem that if a single act of fraud is subject to a six-year limitations period under New York law, it would not be unreasonable to apply the same statute of limitations to the multiple acts of fraud, *inter alia*, required to make out a RICO claim."

**11.** The court also notes that the ABA Task Force Report, discussed *supra* at note 7, recently recommended that Congress amend the RICO statute to include a 4- or 5-year statute of limitations period for civil RICO. Task Force Report at 385–93.

This court concludes that application of the statute of limitations for securities claims would be inconsistent with the underlying remedial purpose of RICO,[12] and that the five-year statute of limitations for fraud cases would be most consistent with Congress' mandate that RICO be liberally construed.[13] The allegations of the complaint support this conclusion. This lawsuit deals with an alleged fraud by a broker against his principal. Mail fraud is the basis of the action, not lack of disclosure, false information, or other violations traditionally redressed by the securities laws. Therefore, unlike the limitations period for fraud, application of the limitations period for securities violations would not necessarily effectuate the policies and purposes underlying the civil RICO statute.

Plaintiffs' RICO claim was brought well within the five-year limitation period for fraud. The fraudulent acts allegedly occurred in February and March, 1980, and the complaint was filed in July of 1984. In such circumstances, determining whether plaintiffs' complaint was filed within the applicable period can be determined in the context of a motion to dismiss. *See Morgan v. Koch,* 419 F.2d 993 (7th Cir.1969).

In accordance with the foregoing opinion, defendants Krumhorn and Smith's motion to dismiss is denied.

---

12. The policies underlying RICO can be gleaned from two recent Seventh Circuit cases. In *Schacht v. Brown,* 711 F.2d 1343 (7th Cir.), *cert. denied,* 464 U.S. 1002, 104 S.Ct. 508, 78 L.Ed.2d 698 (1983), the court held that, in enacting RICO, Congress chose to provide civil remedies for an enormous variety of conduct in order to reach organized criminal activity. *Id.* at 1354. The court recognized that RICO, with its treble damage provisions, would eclipse other civil remedies. The *Schacht* court noted, however, that Congress intended to "cut a wide swath" through conduct which could not be characterized as organized criminal activity in order not to impede reaching the organized criminal activity which RICO sought to eradicate. *Id.* Following *Schacht,* in *Haroco v. American National Bank and Trust Co. of Chicago,* 747 F.2d 384 (7th Cir.1984), *aff'd,* — U.S. —, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985) (per curiam), the court affirmed its view that RICO made garden-variety frauds and fraud committed by business persons, white collar workers, bankers and stock brokers actionable in treble damage proceedings. *Id.* at 390, 395 n. 14. The *Haroco* court also found that simply because existing legal remedies addressed these various frauds, this did not mean that RICO could not be used against the same fraudulent activities. *Id.* at 392. RICO was viewed by the Haroco court as a "supplement" to existing remedies. *Id.; see Durante Bros. and Sons, Inc. v. Flushing National Bank,* 755 F.2d 239 (2d Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 3530, 87 L.Ed.2d 654 (1985).

13. Other courts facing this issue have similarly concluded that state statutes of limitations governing fraud should be applied in RICO cases. *Alexander v. Perkin Elmer Corp.,* 729 F.2d 576 (8th Cir.1984) (fraud in the sale of computer system); *Fustok v. Conti-commodity Services, Inc., et al.,* No. 82 Civ. 1938 (MEL), slip op. (S.D.N.Y. Sept. 24, 1985) [Available on LEXIS, Genfed Library, Cases File] [Available on WESTLAW, DCTU database] (fraud in commodity trading account); *Kirschner v. Cable/Tel Corp.,* 576 F.Supp. 234 (E.D.Pa.1983); (fraud in the sale of securities); *Eisenberg v. Gagnon,* 564 F.Supp. 1347 (E.D.Pa.1983) (fraud in the sale of securities); *D'Iorio v. Adonzio,* 554 F.Supp. 222 (M.D.Pa.1982) (business fraud); *State Farm Fire & Casualty v. Estate of Caton,* 540 F.Supp. 673 (N.D.Ind.1982) (scheme to defraud insurance companies). A contrary conclusion was reached in *Burns v. Ersek,* 591 F.Supp. 837 (D.Minn.1984); however, the *Burns* court noted that the thrust of allegations of the complaint was securities fraud, with only one paragraph in the 37-page complaint referring to mail fraud. Thus, even if this court were to adopt *Burns'* reasoning, it would not be applicable in the instant case, where the crux of the plaintiffs' complaint is fraudulent use of the mail and wire system to support a fraudulent scheme violative of the CEA.