**OVERLAND BOND AND INVESTMENT CORPORATION, a Delaware corporation, and Car Credit Center Corporation, an Illinois corporation, Plaintiffs,**

v.

**Jack ROCKY and Rocket Auto Sales, Inc., Defendants.**

**No. 85 C 10122.**

United States District Court, N.D. Illinois, E.D.

Oct. 22, 1986.

Michael A. Reiter, Loggans & Reiter, Chicago, Ill., for plaintiffs.

John D. Kightlinger, Meinhardt & Kightlinger, Ltd., Arlington Heights, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

This order concerns defendants' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated herein, defendants' motion to dismiss is granted.

## I. FACTS

Car Credit Center Corporation ("Car Credit"), is a wholly owned subsidiary of Overland Bond and Investment Corporation ("Overland") engaged in the business of purchasing used cars wholesale and reselling them at retail. Overland provides financing for the wholesale acquisition of these automobiles for Car Credit. From mid–1975 to mid–1981, Car Credit employed Thomas Mahoney to purchase used cars at wholesale for its retail operations. Rocket Auto was one of the dealerships from which Mahoney purchased used cars on a regular basis.

Car Credit and Overland allege that sometime in 1976 Mahoney and Rocky, President of Rocket Auto, devised and implemented a scheme to defraud plaintiffs by causing Overland to pay amounts in excess of the true market values of the cars purchased by Mahoney for Car Credit. Plaintiffs assert that Mahoney allowed Rocky to inflate the invoice purchase price of the used cars which were sold to Car Credit and financed by Overland in exchange for kickbacks. According to plaintiffs, this scheme continued until approximately July 1978 and was effectively concealed in a manner that did not allow discovery until approximately July of 1981. Plaintiffs filed their six-count complaint against defendants on December 4, 1985 alleging fraud, aiding and abetting breach of fiduciary duty, and violations of the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO") and the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½ § 262 et seq.

## II. DISCUSSION

Defendants' motion to dismiss attacks plaintiffs' complaint on a number of grounds but this Court need only reach the statute of limitations argument to dispose of this case. Congress' failure to provide an explicit limitations period for civil RICO actions requires this Court to adopt the most analogous state time limit. *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 1943, 85 L.Ed.2d 254 (1985). In *Wilson,* the Supreme Court set forth a procedure for deciding which statute of limitations should apply to a federal claim for which no express limitations period is provided. Under this procedure the court is to first decide whether one limitations period should apply

to all RICO actions or whether different periods should apply depending on the particular facts of the case. Second, the court must analogize RICO to a state cause of action. Third, the court must determine which state limitations period to apply to the kind of action the court has found RICO to be. Finally, the court must determine whether the period selected is consistent with the policies of RICO, and if not, what limitations period better serves those policies. *Id.*, 105 S.Ct. at 1944–49.

Courts in this district applying the *Wilson* analysis to civil RICO claims have come to conflicting results in selecting an applicable limitations period. Judges Norgle and Nordberg have held the five-year limitations period for general fraud actions in Ill.Rev.Stat. ch. 110, § 13–215 applies to civil RICO actions. *Davis v. Smith*, 635 F.Supp. 459, 464 (N.D.Ill.1985) (Nordberg, J.); *Mancuso v. Elliott*, No. 84 C 7382, slip op. at 2 (N.D.Ill. Jan. 16, 1985) (Norgle, J.). Four judges have adopted the two-year period applied to punitive actions under Ill.Rev. Stat. ch. 110 § 13–202. *Newman v. Wanland*, No. 85 C 265 slip op. at 3 (N.D.Ill. Mar. 6, 1986) (Williams, J.); *Bolingbrook Properties II v. Irvin*, No. 84 C 10480 slip op. at 4 (N.D.Ill. Aug. 5, 1985) (Moran, J.); *Electronics Relays (India) Pvt., Ltd. v. Pascente*, 610 F.Supp. 648, 651–53 (N.D.Ill. 1985) (Hart, J.); *Traylor v. Central States, Southeast and Southwest Areas Pension Fund*, Nos. 83 C 2206 and 83 C 6283 slip op. at 5–6 (N.D.Ill. Nov. 6, 1984) (Kocoras, J.).

Although most of the judges addressing the limitations problem under the *Wilson* framework agreed that one limitations period should apply to all civil RICO actions, the judges were divided on how to characterize civil RICO claims. Selecting the five-year limitations period, Judge Nordberg noted that Congress intended that RICO be liberally construed to effectuate the law's remedial purposes. *Davis v. Smith*, 635 F.Supp. at 463–64. Since the judge saw the majority of civil RICO claims to be a type of fraud not necessarily discernable in a shorter limitations period, he

concluded the five-year fraud statute rather than the two-year statute for punitive actions would more effectively accommodate RICO's intended remedial purposes. *Id.*

In *Electronics Relays*, Judge Hart exhaustively examined a variety of possible characterizations of civil RICO actions before adopting the two-year limitations period for punitive actions. *Electronics Relays*, 610 F.Supp. at 650–53. Although Judge Hart's review of RICO's legislative history revealed overwhelming evidence that the major purpose of the act was to "address the infiltration of legitimate business by organized crime," little legislative commentary explaining the role RICO's civil provisions were to play in achieving this purpose was uncovered. *Id.* at 651. The only Congressional commentary addressing this issue appeared in a statement by Congressman Puff. The Congressman stated the civil provisions of RICO were added by Congress to allow private individuals injured by a RICO violation to recover treble damages in the same manner as a claimant in a private antitrust action. *Id. citing* 116 Cong.Rec. 35295 (1970). This statement was interpreted by Judge Hart to suggest Congress viewed the treble damages provision as civil RICO's most distinctive feature. *Id.* 610 F.Supp. 651. Given that state law remedies exist for the same conduct prohibited by RICO's civil provisions, Judge Hart found civil RICO's only unique feature to be the fact that new remedies were now available. *Id.* As with the inclusion of treble damages in civil antitrust actions, Judge Hart found the inclusion of RICO's civil provisions to be premised on the Congressional intent that treble damages would provide the incentive necessary to induce private citizens to assist the government in enforcement of the law. *Id.* Thus, Judge Hart concluded that civil RICO actions were best characterized as a treble damages action. *Id.*

Weighing the strengths and weaknesses of the two positions, this Court is unable to join in the conclusion civil RICO claims are best characterized as common law fraud

actions. As Judge Hart noted, the common law fraud characterization fails to encompass the variety of factual premises upon which a civil RICO claim can be asserted. *Electronics Relays*, 610 F.Supp. at 651. This Court is not convinced that the fact a majority of civil actions brought under RICO may be premised on an alleged fraud provides a sufficient basis for characterizing all RICO claims in a similar fashion. The only discernable overriding intent behind the civil RICO provisions appears to be the inclusion of a treble damage remedy to induce private citizens to assist in the enforcement of the act. As the law's civil provisions do not encompass conduct not already actionable at state law, the most distinctive feature of civil RICO appears to be the treble damage remedy. Thus, this Court is led to the conclusion that a civil RICO claim is best characterized as a treble damage action.

■ Turning to the final steps in the *Wilson* analysis, this Court is compelled to come to the same conclusions reached by Judge Hart. For the reasons set forth persuasively in *Electronics Relays*, this Court agrees that the most applicable statute of limitations in Illinois is the two-year period for exemplary damages under Ill. Rev.Stat. ch. 110 § 13–202 and that the adoption of this period is not inconsistent with the federal policy underlying RICO. *See Electronics Relays*, 610 F.Supp. at 651–53. Thus, this Court holds that a two-year limitations period applies to all civil RICO actions.

■ Applying the two-year period to the facts in the present case requires that defendants' motion to dismiss be granted. Plaintiffs' complaint alleges defendants' fraudulent pricing scheme continued until July of 1978 but was effectively concealed in a manner to preclude discovery until July of 1981. Assuming for purposes of defendants' motion that this allegation is true, this Court is still unable to sustain plaintiffs' RICO claims. If defendants' scheme was discovered in July of 1981, plaintiffs must have initiated action before July of 1983 to fall inside the two-year

limitations period. Plaintiffs' civil RICO claims are thus barred by the applicable limitations period.

Plaintiffs' remaining statutory and common law claims are based on pendent jurisdiction. In concluding that plaintiffs' RICO claims are not timely and must be dismissed, this Court must also dismiss plaintiffs' state law claims as no independent basis for asserting jurisdiction remains. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

### III. CONCLUSION

For the reasons stated above, this Court grants defendants' motion to dismiss plaintiffs' RICO claims. Accordingly, plaintiffs' remaining state law claims are dismissed for lack of pendent jurisdiction.

IT IS SO ORDERED.