Earl WAGNER, Plaintiff,

v.

COMMONWEALTH OF PENNSYLVANIA, Department of Military Affairs, Stanley E. Snyder, Former Commandant, In His Former Official and Individual Capacities; Timothy Skarupski, Business Manager, In His Former Official and Individual Capacities; Gail Wright, Personnel Officer, In Her Official and Individual Capacities; and John Carideo, Maintenance Supervisor, In His Official and Individual Capacities, Defendants.

Civil Action No. 94–107.

United States District Court,
W.D. Pennsylvania.

Aug. 18, 1995.

Richard T. Ruth, Erie, PA, for plaintiff.

Thomas F. Halloran, Office of the Attorney General, Pittsburgh, PA, for defendants.

### *MEMORANDUM*

McLAUGHLIN, District Judge.

This action arises out of Plaintiff's employment at the Soldiers and Sailors Home operated in Erie, Pennsylvania by Defendant Commonwealth of Pennsylvania, Department of Military Affairs ("DMA"). Plaintiff alleges that Defendants violated 42 U.S.C. §§ 1983 and 1985 by depriving him of his civil rights under the First and Fourteenth Amendments to the U.S. Constitution. He alleges that he was harassed by other DMA workers and eventually terminated from his position at the Soldiers and Sailors Home ("Home") because he reported theft of the Home's resources by Defendant Carideo. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343 and 1441.[1] Defendants have moved for summary judgment. For the reasons that follow, this Court will deny the motion.

### I. *BACKGROUND*

Plaintiff was hired by the DMA as a Maintenance Repairman II at the Home on November 20, 1989. Plaintiff's Appendix to Brief in Response to Defendants' Motion for Summary Judgment ("Plaintiff's App.") at 7; Defendants' Statement of Material Facts Not in Dispute ("Defs.' Statement") at ¶ 1. Defendant Carideo was Plaintiff's supervisor at the Home.

On August 22, 1990, Plaintiff made allegations of theft of state property and misuse of time against Defendant Carideo to Defendants Snyder, Skarupski, and Wright. Plaintiff's App. at 14. Defendant Snyder reported these allegation in a memorandum to the director of the state Bureau of Veterans' Affairs. *See* Ex. A to Complaint. Defendant Carideo received a one-day suspension from

work as a result of the ensuing investigation. Plaintiff's App. at 144–45.

Plaintiff alleges that, in the wake of the investigation, Defendant Carideo and others working under his supervision began a course of harassment against Plaintiff that continued from Fall 1990 through late May 1991. He alleges that he was shunned and assigned only to jobs in which he would work alone. Plaintiff's App. at 63–67. He also alleges that his property was vandalized or stolen on several occasions during that period and that he was unfairly reprimanded by Defendant Carideo. *Id.* at 71–83, 91–92. Defendant Carideo stated that he had avoided personal contact with Plaintiff after Plaintiff's allegations of theft. Plaintiff's App. at 69.

Plaintiff alleges that he reported these incidents to Defendant Skarupski, who was acting as commandant.[2] Defendant Skarupski acknowledged that Plaintiff raised these incidents but stated that he did not feel that they merited investigation. Plaintiff's App. at 96–99.

Plaintiff also alleges that Defendant Wright was aware of his problems and told Plaintiff's wife in late March or early April 1991 that Plaintiff's situation would not improve "unless he loses that snitch personality." Plaintiff's App. at 105. Defendant Wright admits telling Plaintiff's wife that Plaintiff "was like Don Quixote." Plaintiff's App. at 106.

On May 29, 1991, while at work, Plaintiff found an injured pigeon and placed it in a box so that he could later take it home. Plaintiff's App. at 197. He alleges that Clyde Zappitella, a co-worker in the maintenance division, made several threats against the pigeon that day. Plaintiff's App. at 84–85. When Plaintiff returned at the end of the work day to where he had left the pigeon, it was not there. Plaintiff's App. at 86. Plaintiff then sought out and confronted Zappitella and Michael Mazur, another co-

---

1. As discussed *infra,* this action was commenced in the Court of Common Pleas for Erie County, Pennsylvania.

2. Defendant Snyder was injured in January 1991 and worked only on a limited basis from that

date through June 1991. Aff. of Linda Leese at ¶ 10. Leese avers that Defendant Snyder played no part in the investigation of Plaintiff's complaints of harassment or in subsequent events. *Id.* Plaintiff does not dispute this averment.

worker. Plaintiff's App. at 86–88. Shortly thereafter, Plaintiff and Zappitella fought. Plaintiff's App. at 88–90. Plaintiff alleges that he struck Zappitella in self-defense. Plaintiff's App. at 88–89. Zappitella and other witnesses allege that Plaintiff instigated the fight. Appendices C, D to Ex. C to Affidavit of Linda Leese. Two of the Home's security guards intervened, and the fight ended. Plaintiff's App. at 90.

Paragraph 2 of Section III of the DMA Discipline Manual describes the procedure to be followed when an employee's suspension or termination is sought:

> 2. RECOMMENDATIONS—All recommendations for suspension and termination WILL BE SENT to the Bureau of Administrative Service, ATTN: Linda Leese, as expeditiously as possible. Coordination may be made with Administrative Services concerning the incident and appropriate degree of discipline to recommend. It is imperative that proper documentation accompany the request for disciplinary action, along with your recommendation of the degree of disciplinary action to be taken. This request should be sent to Administrative Services within seven (7) days of the occurrence unless approval has been received from Administrative Services for additional time to conduct the investigation.

Ex. A to Leese Aff. The Bureau of Administrative Services is then to prepare a final report to the Adjutant General of the DMA, who must personally approve the decision to suspend or terminate. A letter identifying the action to be taken is then forwarded to the DMA facility to be signed by the appropriate on-site official and delivered to the employee. *Id.*

Table V–10 of the Discipline Manual identifies "Maximum Disciplinary/Corrective Actions that May be Imposed." Ex. B to Leese Aff. For a first offense of fighting at the work site that occurs after an employee has completed his probationary period, the identified penalty is "discharge unless considerable provocation or other mitigating circumstances are present." "Matters to be Considered in Mitigation or Extenuation" include "Employee's length of service and gen-

eral record. Amount of provocation, if any was present, and the degree and extent of the conduct including the extent of any physical damages done to another person." *Id.*

On May 30, 1991, the day after the fight, Defendant Wright placed both Plaintiff and Zappitella on suspension and began her investigation of the fight. The following day, Defendant Skarupski, in his capacity as acting commandant, forwarded to the DMA's Director of Administrative Services a memorandum "strongly" recommending Plaintiff's termination. App. A to Ex. C to Leese Aff. It noted in part, "This is a serious matter that must be disposed of quickly. . . . [Plaintiff's] presence at this facility presents a threat not only to the employees of this facility, but to the residents as well. Residents who witnessed this event have expressed their concern and fear for their safety." *Id.* The initials "gw" appear at the bottom of the memorandum. The memorandum was also signed with a short note concurring in the recommendation by the Deputy Director of the DMA's Veterans Homes Division. *Id.* The memorandum was accompanied by Defendant Wright's reports of her interviews with Plaintiff and Zappitella and written statements from them and several other Home employees who had witnessed the fight. *See* Apps. B–E to Ex. C to Leese Aff.

On June 4, Linda Leese, DMA's personnel officer, forwarded this packet of information to the Adjutant General and other superiors. Leese Aff. at Ex. C. She also recommended that Plaintiff be terminated. *Id.* All addressees concurred in this recommendation. Plaintiff was terminated on June 10, 1991.

In an affidavit given for this action, Leese stated that the recommendation of Defendants Wright and Skarupski was immaterial to her decision. Leese Aff. at ¶ 12. She averred that, regardless of that recommendation, she would have recommended Plaintiff's termination on the basis of the witness statements included in the packet submitted to her. *Id.* at ¶ 13.

Plaintiff filed a grievance protesting this decision on June 17, 1991. This grievance was denied. Leese Aff. at Ex. C. Plaintiff's

application for unemployment compensation benefits was also denied.

Plaintiff filed a praecipe for a writ of summons with the prothonotary of the Erie County, Pennsylvania Court of Common Pleas on March 26, 1993. Plaintiff's App. at 170. Plaintiff's counsel avers that he then investigated how to serve all Defendants and that, during the course of this investigation, he communicated on several occasions with two attorneys from the Office of the Pennsylvania Attorney General, including Defendants' counsel here. Plaintiff's App. at 169–72. The writ of summons was reissued on June 4, 1993. Defs.' Statement at ¶ 10. It was served on all Defendants other than Defendant Snyder on June 10, 1993 and on Defendant Snyder on June 30, 1993. *Id.*

The Complaint was filed on April 4, 1994 and served on Defendants the following day. This action was removed to this Court on April 14, 1994.

## II. *STANDARD OF REVIEW*

■ The movant is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." F.R.Civ.P. 56(c). This rule allows parties to demonstrate prior to trial that opposing claims "have no factual basis." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). The inquiry here is "whether there is any need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53. Thereafter, the burden shifts to the non-moving party to demonstrate that there is a genuine issue for trial. F.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. All inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

## III. *DISCUSSION*

■ 42 U.S.C. § 1983 provides a cause of action for certain deprivations of civil rights. To recover under § 1983, a plaintiff must "prove he suffered a violation of rights created by federal law, *Oklahoma City v. Tuttle,* 471 U.S. 808, 816 [105 S.Ct. 2427, 2432, 85 L.Ed.2d 791] (1989), at the hands of a person acting under color of state or territorial law, *Gomez v. Toledo,* 446 U.S. 635, 640 [100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572] (1980)." *Karnes v. Skrutski,* 62 F.3d 485, 490 (3d Cir.1995). Defendants raise a number of reasons why they believe that Plaintiff is not entitled to recover under this statute.

### A. *Claims against the Commonwealth of Pennsylvania, Department of Military Affairs and Snyder*

The Court dismissed Plaintiff's claims against Defendants Snyder and DMA at the Pretrial Conference held on August 10, 1995. Plaintiff concurred in this action.

### B. *Claims Arising from Plaintiff's Termination*

■ Plaintiff alleges that Defendants recommended his termination in response to his constitutionally protected speech. Defendants argue that, because Plaintiff was involved in a fistfight at the Home, he would have been terminated regardless of whether he had lodged his complaint against Defendant Carideo. Plaintiff has offered sufficient evidence in support of his theory to establish a jury question.

In *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), the Supreme Court addressed the proper standard and burdens to be applied in a § 1983 case alleging a deprivation of rights under the First Amendment:

Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected,

and that this conduct was a "substantial factor"—or, to put it in other words, that it was a "motivating factor" in the Board's decision not to rehire him. [Plaintiff] having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's re-employment even in the absence of the protected conduct.

*See also Feldman v. Philadelphia Housing Authority,* 43 F.3d 823, 829 (3d Cir.1994).

Defendants concede that Plaintiff's reports to his superiors about Defendant Carideo were on a matter of public concern and were therefore protected by the First Amendment.

However, Defendants challenge whether this speech was a substantial or motivating factor in the decision to discharge Plaintiff. They point to the Discipline Manual and to Leese's statement that she would have recommended Plaintiff's dismissal on the basis of the submitted statements of home employees regardless of the recommendation from Defendants Skarupski and Wright.

Plaintiff responds that in several other incidents in which employees at the Home engaged in fights at work, those employees were not dismissed. *See* Plaintiff's App. at 125–26 (Wright deposition regarding slapping incident involving LuAnn Caldwell and Michael Alex); *id.* at 127–39 (Gresh testimony from grievance hearing regarding knife fight between Andy Jones and Norm Allen). Plaintiff states that discovery for this action revealed no reference to these incidents in the personnel files of any of the participants. Plaintiff also notes that Defendants Skarupski and Wright did not recommend Zappitella's dismissal and that Zappitella was not dismissed as a result of the fight. Based on the above, a jury could reasonably determine that the distinguishing factor between the treatment of Plaintiff and the treatment of other Home employees involved in fights was Plaintiff's protected speech.

Defendants also argue that, even if Plaintiff's speech was a factor in their recommendation that he be dismissed, the same decision would have been reached absent that factor. They point again to the policy outlined in the discipline manual.

Because this was Plaintiff's first fighting offense and he had completed the probationary period, the discipline manual provided that the decision to dismiss him was not mandatory. Therefore, Plaintiff has raised a legitimate issue as to whether his protected speech figured into the decision to recommend his dismissal.

However, even if the manual had stated that dismissal was mandatory, the differing punishment of other Home employees who fought at work would still have created a jury issue. In *Holder v. City of Allentown,* 987 F.2d 188, 191–92 (3d Cir.1993), the plaintiff was an employee of the City of Allentown, Pennsylvania and lived in another municipality. He wrote a letter to the Allentown paper criticizing an Allentown residency ordinance. The ordinance mandated that all municipal employees were to live in the city and required the dismissal of those employees who lived elsewhere. The letter was published, and the plaintiff was subsequently dismissed. He sued under § 1983 and alleged, in part, that no other city employee had ever been fired under the ordinance. *Id.* at 194. The district court granted the city's motion to dismiss, partly on the basis that Holder would have been fired even if he had not written the letter. *Id.* at 196. In reversing the dismissal, the Third Circuit concluded that the complaint fairly raised the issue of whether the ordinance had been applied in a discriminatory manner. *Id.* at 197. The court noted, "The fact that the duty being carried out by state or local officials in applying the law is labeled 'mandatory' as opposed to 'discretionary' does not in and of itself render irrelevant the potentially unconstitutional motives of such officials." *Id.*

Here, Plaintiff has raised legitimate factual questions as to the application of the disciplinary rules to his case. Therefore, his claims must survive this motion.

Defendants also seek summary judgment on the basis that they played no role in the decision to discharge Plaintiff. They note that the decision was made by the commandant and other statewide officials of the

DMA. However, on this record, the decision to recommend Plaintiff's dismissal and submit a report to these officials may be sufficient for liability to attach. The personnel files of those employees averred to have participated in earlier fights bore no reference to those incidents. That absence might lead a jury to conclude that the decision to submit a report and recommendation with regard to Plaintiff involved some de facto exercise of discretion. Defendant Skarupski signed the Home's recommendation that Plaintiff be dismissed. Defendant Wright conducted the investigation that produced this recommendation, and Defendant Carideo participated in it. Thus, Plaintiff has adduced enough evidence to survive this motion with respect to all three remaining Defendants.

### C. *Claims Related to Harassment of Plaintiff*

Plaintiff alleges that he was the victim of a number of incidents of harassment between September 1990, when he made his allegations of theft against Defendant Carideo, and May 1991. Defendants raise several bases on which they believe that they are entitled to summary judgment on Plaintiff's claims arising from these harassing acts. This action is timely with respect to all harassment of and actions against Plaintiff occurring on or after March 26, 1991. However, there is no basis on which Defendants Skarupski or Wright can be held legally accountable for this alleged harassment.

#### 1. Statute of limitations

Defendants argue that judgment should be entered in their favor with respect to the claims of harassment prior to Plaintiff's suspension because this action was commenced beyond the appropriate limitations period. Defendants submit that this action did not commence until the reissuance of the writ of summons on June 4, 1993. They note that all of the incidents of harassment necessarily occurred prior to Plaintiff's May 29, 1991 suspension.

■ Plaintiff may proceed with his claims of harassment for acts that occurred on or after March 26, 1991. The limitations period on an action brought under § 1983 in a state or federal court sitting in Pennsylvania is two years. *See Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 1947, 85 L.Ed.2d 254 (1985) (§ 1983 actions controlled by statute of limitations for personal injury actions of state in which court hearing the action sits); 42 Pa.C.S. § 5524 (actions for personal injuries to be commenced within two years). An action may be commenced in Pennsylvania's state courts by the filing of either a praecipe for a writ of summons or a complaint. Pa.R.Civ.P. 1007. Once filed, either of these pleadings must generally be served on opposing parties within thirty days. Pa.R.Civ.P. 401(a). A writ or complaint not served within this time may be reissued or reinstated, respectively, by the prothonotary "at any time and any number of times." Pa.R.Civ.P. 401(b).

■ These rules can expand the period in which an action may be filed after accrual of the right to sue:

> The Pennsylvania Supreme Court has construed this provision to mean that a writ may be reissued any time within an "equivalent period," i.e., a period "which, measured from the date of original issuance of the writ, or the date of a subsequent reissuance thereof, is not longer than the period of time required by the applicable statute of limitations for the bringing of the action."

*Patterson v. American Bosch Corp.,* 914 F.2d 384, 387 (3d Cir.1990) (quoting *Zarlinsky v. Laudenslager,* 167 A.2d 317, 320 (Pa.1961)). For example, when a praecipe is filed but the writ is not timely served on a cause of action having a two-year statute of limitations, the plaintiff faces a new limitations period of two years from the date of the filing of the praecipe in which to have the writ reissued. *See Wible v. Apanowicz,* 306 Pa.Super. 262, 452 A.2d 545, 546–47 (1982).

At some point, of course, extension of the limitations period through repeated reissuance of the writ would become impermissible. *See Wilson,* 471 U.S. at 271, 105 S.Ct. at 1944 (rejecting possibility that an action under § 1983 could be " 'brought at any distance of time.' ") (quoting *Adams v. Woods,* 2 Cranch

336, 342, 2 L.Ed. 297 (1805)). The Supreme Court of Pennsylvania has applied its rules

to avoid the situation in which a plaintiff can bring an action, but by not making a good-faith effort to notify a defendant, retain exclusive control over it for a period in excess of that permitted by the statute of limitations.

*Lamp v. Heyman,* 469 Pa. 465, 366 A.2d 882, 889 (1976).

■ In light of these rules, Plaintiff's claims for injuries that he suffered on or after March 26, 1991 are timely. The original praecipe for a writ of summons was filed with the prothonotary of the Common Pleas Court on March 26, 1993. The writ was not served. It was reissued on June 4, 1993, slightly more than two months—and well less than two years—later. The reissued writs were served within the allotted time. However, any claims for injuries suffered prior to March 26, 1991 are barred. *See Kost v. Kozakiewicz,* 1 F.3d 176, 188 (3d Cir.1993).

Allowing these claims is consistent with the rule of *Lamp* and fair to the parties. The averments of Plaintiff's counsel are uncontradicted and indicate that a good-faith effort was made to effectuate service of the writ within 30 days of its original issuance. It is also worth noting that, had Plaintiff commenced this action in this Court on March 26, 1993 by the filing of a complaint, his June 1993 service on Defendants would have occurred well within the 120 days allotted under F.R.Civ.P. 4(m). *See also* F.R.Civ.P. 81(c) (Federal Rules of Civil Procedure "apply to civil actions removed to the United States District courts from the state courts and govern procedure *after removal.*") (emphasis added).

Plaintiff's conspiracy claims under 42 U.S.C. § 1985 arising from injuries he suffered prior to March 26, 1991 are also time-barred. *See Kost,* 1 F.3d at 190–91. His conspiracy claims for injuries suffered on or after that date are timely.

2. Applicability of theory of supervisory liability

■ Plaintiff does not allege that Defendants Skarupski or Wright actually partici-

pated in the harassment. Rather, he alleges in his complaint that they are liable to him because of their supervisory relationship to the persons who performed the harassing acts. Defendants correctly note that they cannot be liable to Plaintiff under § 1983 on a theory of respondeat superior. *See Monell v. New York City Dep't of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *Sample v. Diecks,* 885 F.2d 1099, 1117–18 (3d Cir.1989).

Plaintiff argues instead that he should be able to proceed on a theory of supervisory liability under *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The Third Circuit has construed "supervision" in this context to include "training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample,* 885 F.2d at 1116.

■ For supervisory liability to attach, Plaintiff must identify "a specific supervisory practice or procedure" that Defendants Skarupski, Wright, and Carideo failed to employ and show that (1) the existing custom and practice created an unreasonable risk of constitutional deprivation, (2) these Defendants were aware that this unreasonable risk existed, (3) they were indifferent to that risk, and (4) the failure to assure that Plaintiff's complaints received meaningful consideration resulted from Defendants' failure to adopt the specific practice or procedure. *See id.* at 1118.

Plaintiff's claims in this regard are much closer to a theory of respondeat superior than to the supervisory liability identified in *Sample.* Plaintiff does not identify a practice or procedure that Defendants should have followed. He notes a general acquiescence in the alleged course of harassment, but he does not tell this Court what procedure Skarupski, Wright, or Carideo could have instituted that would have caused Plaintiff's problems to end. Although Plaintiff does imply that Defendant Skarupski could have investigated his later complaints, he nowhere suggests that Skarupski's decision was the result of some practice or procedure

that could have been—and was constitutionally mandated to have been—changed.

### 3. Direct liability

Plaintiff also alleges that Defendant Carideo orchestrated and participated in the course of harassment against Plaintiff. The only argument that Defendants have presented against this theory of liability is that Plaintiff's claim is untimely. As noted *supra*, Plaintiff's claim is timely with respect to harassment he alleges that he suffered on or after March 26, 1991. Defendants have not argued on this motion that there is no evidence to support Plaintiff's claim. *See Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the discovery record and affidavits] which it believes demonstrate the absence of a genuine issue of material fact."). Therefore, Plaintiff's claims in this regard survive this motion to the extent that they are timely.

## IV. *CONCLUSION*

An appropriate order will follow.

## *ORDER*

AND NOW, this 18 day of August, 1995, IT IS HEREBY ORDERED:

1) that, for the reasons stated on the record of the Pretrial Conference of August 10, 1995, all counts and claims against Defendants Commonwealth of Pennsylvania, Department of Military Affairs and Stanley E. Snyder are DISMISSED and

2) that Defendants' Motion for Summary Judgment [Doc. 20] is DENIED.